UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY SCRICCA, ADMINISTRATOR OF THE ESTATE OF ANGELISE RODRIGUEZ; COLEEN RODRIGUEZ & ANGEL MIGUEL RODRIGUEZ

3:22-CV-01497-RNC

Plaintiffs

VS.

THE BOPPY COMPANY, LLC;
ARTSANA U.S.A., INC. D/B/A CHICCO; &
TARGET CORPORATION D/B/A
TARGET STORE, INC.

Defendants

JANUARY 19, 2024

**DEFENDANT THE BOPPY COMPANY, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY PRODUCTION**

Defendant The Boppy Company, LLC ("Defendant" or "Boppy"), by its counsel, hereby submits this memorandum in opposition to Plaintiffs' Motion to Compel discovery production (the "Motion") in response to their First Set of Requests for Production ("First Set").

Hoping to piggyback off the effort of other litigants, Plaintiffs seek to compel all materials produced in discovery in six (6) other cases pending across the country. They ask for this with no regard to the relevance or confidential nature of materials from other cases, nor to the protective orders in those cases. For the reasons set forth below, this Court should deny Plaintiffs' Motion.

## BACKGROUND

Plaintiffs Anthony Scricca, Administrator of the Estate of Angelise Rodriguez; Coleen Rodriguez; and Angel Miguel Rodriguez ("Plaintiffs") filed this suit on November 7, 2022, asserting claims for Product Liability, Loss of Consortium, Statutory Recklessness, and violations of the Connecticut Unfair Trade Practice Act ("CUTPA") arising from the death of four-month-

old Angelise Rodriguez ("the decedent"). *See generally* Compl., ECF 1, Ex. A. Plaintiffs allege that on November 8, 2019, the decedent was placed in, on, or around the Boppy Newborn Lounger ("NBL") and later found unresponsive. *Id.* ¶¶ 8–9. Plaintiffs sued Boppy and Artsana USA as the alleged designers, manufacturers, and sellers of the NBL. *Id.* ¶ 6.

On October 18, 2023, Plaintiffs served the First Set which contains two Requests[1]:

> 1. Copies of any Interrogatories and Requests for Production or other written discovery requests issued to Defendant The Boppy Company, LLC and its responses and objections to those Interrogatories and Requests for Production or that other written discovery ***in the following cases***: . . .
>
> 2. All deposition notices, depositions transcripts and requests for production issued to the Corproate [sic] Representative of Defendant The Boppy Company, LLC under FRCP 30(b)(6) ***in the following cases***: . . .

(Emphasis added). The "following cases" are six (6) unrelated lawsuits in other district courts in which Boppy is a defendant (the "Other Lawsuits"). The First Set contains no direct requests for information from Boppy related to this case.

On November 13, 2023, Boppy objected to these requests on several grounds, including that: (1) Plaintiffs failed to tailor the requests by specifying what materials from the Other Lawsuits might be relevant, (2) Plaintiffs improperly seek responses to up to 150 interrogatories by requesting Boppy's interrogatory responses from the Other Lawsuits, and (3) the discovery in the Other Lawsuits is subject to protective orders from the respective district courts. On December 6, 2023 and December 18, 2023, the parties exchanged letters further discussing these requests and the objections. Plaintiffs now move to compel discovery under Federal Rule of Civil Procedure

[1] Plaintiffs' First Set is attached, hereto, as **Exhibit 1**.

37 and Local Rule 7(a)(1), requesting that this Court order Boppy to share the aforementioned discovery from the Other Lawsuits. The Motion should be denied.

## ARGUMENT

This Court should deny the Motion because: (A) the present case is unrelated to the six Other Lawsuits; and (B) an order granting the Motion would run afoul of protective orders in other jurisdictions. On balance, the shared discovery would threaten the confidentiality assured to Boppy and the plaintiffs in the Other Lawsuits and place an undue burden on Boppy to convince multiple courts to modify their protective orders. Instead, Plaintiffs are free to request and obtain information from Boppy *in this case* by serving their own discovery requests, as any diligent litigant would and should do.

### A. PLAINTIFFS IMPROPERLY SEEK CLONED DISCOVERY FROM SIX OTHER LAWSUITS THAT ARE IRRELEVANT AND IMMATERIAL TO THIS CASE.

A "cloned discovery" request is one that presents a blanket request for all documents produced or received in other proceedings. *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000); *see Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 18-CV-1781 (PGG) (BCM), 2020 WL 9423921, at *1 (S.D.N.Y. Aug. 31, 2020). As Plaintiffs acknowledge, "federal courts often disfavor cloned discovery, admonishing plaintiffs' counsel to do their own work and request the information they seek directly." Pls.' Mem. Supp. Mot. to Compel at 9, ECF No. 84-12 (hereinafter "Pls.' Mem.") (citing *Midwest Gas*, 2000 WL 760700 at *1). Cloned discovery is proper only when the *fact that a party produced or received* certain documents is relevant to the present case. On the other hand, when the party seeking discovery is interested in the content of the documents, they must instead "make proper requests describing the information in which they are interested." *See id.*; *see also N.J.*

*Carps. Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08 Civ. 5653 (PAC), 2012 WL 13135408, at *1 (S.D.N.Y. 2012) (denying a cloned discovery request and explaining that "plaintiffs continue to be free to seek specific information" but cannot say "you gave some documents to the government concerning another investigation, so give them to me" (internal quotes omitted)).

In limited circumstances, some courts have allowed cloned discovery when the party seeking it is interested in the content of documents from a virtually ***identical*** case. *See, e.g.*, *Sticht v. Wells Fargo Bank, N.A.*, No. 3:20-cv-1550 (VAB), 2023 WL 2206641, at *4–6 (D. Conn. Feb. 27, 2023). But the cases must be sufficiently similar in ***both*** law and fact to allow cloning discovery. *See id.* at *4–5; *Whitman v. State Farm Life Ins. Co.*, No. 3:19-cv-06025-BJR, 2020 WL 5526684, at *3 (W.D. Wash. Sept. 15, 2020).

Here, Plaintiffs seek cloned discovery not just from one other purportedly similar case, ***but from six***. Plaintiffs' First Set requests "*any* Interrogatories and Requests for Production or other written discovery requests" from the Other Lawsuits and their respective responses. Plaintiffs further request *all* deposition notices, depositions transcripts, and requests for production issued to Boppy's corporate representative in the Other Lawsuits. Plaintiffs' effort to reframe their requests as "not cloned discovery" is syntax without import. Whether called "cloned discovery," "copy cat" requests, or even "monkey see/monkey do" requests, *see N.J. Carps. Health Fund*, 2012 WL 13135408, at *1, the real issue is that federal courts disfavor requests like the First Set. *See Sticht*, 2023 WL 2206641, at *5 (explaining that courts around the country have held that requesting documents produced in another case is not generally proper) (citing *Goro v. Flowers Foods, Inc.*, No. 17-cv-02580-JLB, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019)).

**1. Plaintiffs' Cloned Discovery Request is Facially Improper Because Plaintiffs Are Interested in the Content of the Documents.**

The Motion should be denied because Plaintiffs fail to articulate the relevance of the fact that the requested documents were produced in the Other Lawsuits, and instead focus on the content of the discovery.

Plaintiffs attempt to distinguish *Midwest Gas* with the misleading mischaracterization that "there was no showing that the documents were relevant or relating to the pending case." Pls.' Mem. at 10. But *Midwest Gas* did not turn on the substantive relevance of the documents; instead, the court held that "*the fact that* particular documents were produced or received by a party" must be relevant, and the court contrasted this from situations in which plaintiffs are interested in the content of documents. *Id.* (emphasis added).

Because Plaintiffs are interested in the content of the discovery, "counsel must do their own work and request the information they seek directly." *Midwest Gas Servs.*, 2000 WL 760700, at *1. Plaintiffs' counsel have inexplicably shown persistent reluctance to draft their own discovery. Plaintiffs have served three sets of requests for production. The two requests from the First Set both seek discovery from the Other Lawsuits. The Second Set, served on December 20, 2023, seeks documents related to a media monitoring company with whom Boppy contracted.[2] The Second Set is a carbon copy of requests that the plaintiffs in *Mainor*—one of the Other Lawsuits—served via subpoena to the media company nine days prior.[3] Plaintiffs essentially copied all fifteen of the requests in the *Mainor* subpoena to create the Second Set.[4] The Third Set of Requests for Production is the only instance in which Plaintiffs worked to tailor a handful of

---

[2] Plaintiffs' Second Set is attached, hereto, as **Exhibit 2**.
[3] The *Mainor* subpoena is attached, hereto, as **Exhibit 3**.
[4] *Compare* **Exhibit 2** and **Exhibit 3.**

(*i.e.*, eight) requests purportedly relevant to this case. Plaintiffs have not served any interrogatories on Boppy, instead hoping to obtain Boppy's responses to approximately 150 interrogatories in other cases—well over the 25 interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1).

Plaintiffs suggest that the Court should treat this case as a sort of multidistrict litigation, but never filed a motion initiating the process to transfer this proceeding to a multidistrict litigation, as required under 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. Plaintiffs' "mini-MDL" legal fiction entirely sidesteps the inquiry on whether cloned or shared discovery among the different cases is appropriate.

At every corner, Plaintiffs' counsel have sought shortcuts to evade their litigation responsibilities, and this Court should not sanction the same.

### 2. Plaintiffs Fail to Show the Other Lawsuits are Sufficiently Relevant to the Distinct Issues in the Present Case – Both Factually and Legally – to Warrant Cloned Discovery.

Courts that have allowed cloned discovery require the requesting party to establish relevance among cases by showing ***both*** factual and legal overlap. *See Sticht*, 2023 WL 2206641, at *4–5 (granting narrowed reproduction of discovery when the underlying liability issues were essentially identical and there were no factual idiosyncrasies distinguishing them). A common underlying claim between cases is not sufficient to warrant cloned discovery when the factual nuances of the cases may have no bearing on the present case. *See id.* at *5; *Fontana v. Grove Sch., Inc.*, No. 3:22-CV-01180 (SVN), 2023 WL 5289557, at *1 (D. Conn. Aug. 17, 2023) (refusing to order cloned discovery between two cases involving mental-health related deaths of students who sought counseling at the defendant school, in part because the decedents saw different health providers at different time periods). Even in *Sticht*—Plaintiffs' lead case—the court noted that "asking for all documents produced in another case is not generally proper." 2023

WL 2206641 at *5. Courts disfavor this type of discovery because plaintiffs bear the burden of establishing the relevance of the discovery they seek, and a party asking for all documents produced in another case does not even know what they are asking for. *See Fontana*, 2023 WL 5289557, at *1. Thus, courts look for ***nearly-identical*** cases before permitting cloned discovery.

Here, Plaintiffs cannot meet this requirement. The factual differences between the present case and the Other Lawsuits are pronounced, and the underlying claims are only superficially similar. Plaintiffs note that the six Other Lawsuits "all employ close to identical language about asphyxiation, Boppy's knowledge of the risk of suffocation, and Boppy's failure to stop the sale of Loungers despite this risk." *See* Pls.' Mem. at 6. But Plaintiffs ignore the unique underlying facts of each case. Indeed, the facts in the instant matter depart significantly from the Other Lawsuits, namely: (1) the cause of death was a blunt impact injury and skull fracture[5]; (2) the decedent's father was convicted under Connecticut law for Risk of Injury after failing to properly supervise his infant child[6]; (3) the evidence collected near the time of the incident is bereft of any mention of the NBL; and (4) evidence suggests that the NBL was purchased *after* the incident to fabricate the involvement of Boppy's product and pursue this lawsuit. Further, the Other Lawsuits were all brought under different states' product liability schemes.

**a. The Other Lawsuits Are Factually Distinct From this Case.**

While the Other Lawsuits are superficially similar, distinguishing evidence in this case shows that the cause of death here was a blunt impact injury caused by negligent supervision, and the NBL's role was fabricated. Plaintiffs allege in their Complaint that on November 8, 2019, the

---

[5] The first page of the Chief Medical Examiner Report is attached, hereto, as **Exhibit 4**. Please note, the undersigned can make the full report available to the Court, if necessary, but is withholding the other pages of the report that detail the examination of the decedent in consideration of the private health information it could be construed to contain.
[6] A copy of Angel Rodriguez's conviction is attached, hereto, as **Exhibit 5**.

decedent "was placed in her crib on her back with the Boppy Newborn Lounger," "in or around" the product, and that she was later found unresponsive, taken to the hospital, and pronounced dead. Compl., ECF No. 1., Ex. A. With nothing more than this chronology, Plaintiffs conclude that the NBL is dangerous and defective and caused the decedent's injuries and death.

The evidence gathered thus far casts an entirely different shadow on Plaintiffs' case. Immediately following decedent's injuries, there was no mention of an NBL. Decedent's father stated in police interviews that he placed the decedent on the "bed," left her unattended on the bed, and later found her on the bed.[7] Emergency room records reflect the same. According to the police reports, the father had placed various pillows around the decedent—but the reports do not specify an NBL. Further, when canvassing the scene of the injury, the police did not document, collect, or retain an NBL—although they did document burn holes in the sheets, white pills by the bed, and marijuana on the kitchen table. In a March 10, 2020 health evaluation, the mother, Coleen Rodriguez, also failed to mention the NBL. She described only that "her husband had proceeded to leave the bedroom where the baby had been laying on her back in the bed and when he returned, the baby was laying on her belly and had suffocated to death."[8]

The autopsy report of the Chief Medical Examiner established the cause of death to be a "blunt impact injury of head and neck with skull fracture," and the manner of death to be "homicide."[9] The father was arrested for manslaughter and convicted of a felony on the finding that he had left the decedent unattended at the home for up to an hour.[10]

---

[7] The Police Reports are attached, hereto, as **Exhibit 6**. By way of a few examples, please refer to page 7/16 and pages 14–15/16. The recorded interviews can be made available to the Court.
[8] The Defendant can provide the Court with Coleen's medical records for an *in camera* review, if necessary.
[9] *See* **Exhibit 4**.
[10] *See* **Exhibit 5**.

Under oath to law enforcement, a non-party witness, Marguerita Cora, who was friends with Plaintiff Coleen Rodriguez, revealed that (1) this lawsuit involving the NBL has been fabricated; (2) Coleen Rodriguez admitted to falling down the stairs with the decedent earlier in the same day that the decedent was later found unresponsive, but did not take the decedent to the hospital because she was late for work; and (3) after the death of the decedent, Coleen Rodriguez confided in her friend that she saw a Facebook ad for a lawsuit against Boppy, and then bought a pillow to get a receipt and call the lawyers.[11]

Statements about the skull fracture—the determined cause of death—have changed over time. In a November 2019 police interview, the mother stated that a couple weeks prior to the death, while she was changing the baby's diaper, the decedent had fallen from the bed to the floor. One year later, Ms. Rodriguez stated that, two days before the decedent's death, she left the decedent upstairs and heard the thump of the decedent hitting the floor. In May 2023 when responding to Boppy's interrogatories[12], the mother first claimed that three days before the incident, she had placed the decedent on the NBL, the NBL flipped, and the decedent fell.[13] Nearly four years after the incident, the NBL worked its way into Plaintiffs' fact pattern.

All of these facts are absent from the Other Lawsuits. Generally, the complaints from the Other Lawsuits allege that the design of Boppy's NBL increased the risk of asphyxiation or suffocation, that an infant was placed on or around the product and later found unresponsive there, and that the cause of death in each case was asphyxiation or suffocation. The Other Lawsuits are far from identical to the instant lawsuit. Absent the blunt impact injury that caused the decedent's

---

[11] The Statement is attached, hereto, as **Exhibit 7**.
[12] Coleen's initial Interrogatory responses are attached, hereto, as **Exhibit 8**. Specifically, please refer to the response to Interrogatory #10.
[13] These facts are absent from Plaintiffs' Complaint.

death here, the alleged fall(s) that may have contributed to it, the father's manslaughter conviction, and the likely fabrication of the claims regarding the NBL—none of those cases turn on the same threshold issue here of whether Boppy's product was even involved in the circumstances or among the causes of the death. The differences here strike at the heart of the allegations, far beyond the hypothetical "idiosyncratic financial problems of the plaintiffs" that *Sticht* explained would factually differentiate a case enough to bar cloned discovery. *See* 2023 WL 2206641, at *5. The discrete aspects of the six "comparator" lawsuits have no bearing on Plaintiffs' action, and, at the very least, do not meet the high standard for cloned discovery. *See id.*

**b. The Other Lawsuits Are Legally Distinct From This Case.**

Even if the facts were close enough to consider cloned discovery, the underlying legal claims are not sufficiently similar. Courts look for underlying legal claims that are nearly identical before allowing cloned discovery. *See Sticht*, 2023 WL 2206641, at *4-5 (the legal claims should be "essentially . . . identical"). Here, given the evidentiary developments in the case outlined above, complicated questions of proximate causation that stem from the infant's prior fall injuries, the skull fracture, and the criminally-negligent supervision will become the central legal inquiry in this lawsuit. This case has thus strayed far from the product liability claims in the Other Lawsuits. Further, each of the Other Lawsuits involves claims under separate state product liability schemes—including the laws of Maryland, Florida, Missouri, Indiana, Louisiana, and Alabama—that are subject to differing legal standards from the instant one brought under Connecticut law. The legal issues here are different from those presented in the Other Lawsuits.

Plaintiffs rely on *Garner v. Amazon.com, Inc.*, No. 2:21-CV-00750, 2023 WL 6038011 (W.D. Wash. Sept. 15, 2023). In *Garner*, the plaintiffs in a class action brought a motion to compel against Amazon when they learned of a parallel Federal Trade Commission ("FTC") investigation

against Amazon for the same issue in their own class action—that "Alexa" devices were recording private conversations without consent and in violation of privacy laws. *See id.* at *1.[14] When the *Garner* plaintiffs learned about the FTC investigation, they realized, and the Court agreed, that Amazon had likely withheld discovery responsive to plaintiffs' direct requests to Amazon, such as information about the "storage, transmittal, or providing files containing, or transcripts of, recordings by Alexa devices." *See id.* at *1–2. Thus, although the *Garner* court discussed "cloned discovery," the issue was actually that documents Amazon produced to the FTC were also responsive to the class action plaintiffs' direct requests and yet were not produced. Taken in context, the "cloned discovery" in *Garner* was not truly a request for the blanket reproduction of documents produced in another proceeding and thus has no bearing on Plaintiffs' position here that blanket discovery of all documents produced in six other cases is relevant.

Plaintiffs also heavily rely on *Whitman* as a case in which the allegedly similar cases were "so similar that the materials sought in discovery should be shared." Pls.' Mem. at 10. But *Whitman* does not fit the facts here because it required both factual and legal overlap between cases to support cloned discovery. *See id.* at *3. As noted above, Plaintiffs cannot meet this standard.

**3. The First Set is Overbroad.**

The relevance inquiry additionally requires that the discovery requested is not overbroad—a concern inherent in cloned discovery. *See Fontana*, 2023 WL 5289557, at *1 (denying request for cloned discovery because moving party could not explain the relevance of the requested materials); *Sticht*, 2023 WL 2206641, at *5; *N.J. Carps.*, 2012 WL 13135408 at *1 (rejecting request for cloned discovery and directing plaintiffs to make specific, direct requests).

---

[14] The *Garner* opinion does not describe the underlying facts, but background information about the claim was located in the complaint. *See Garner v. Amazon, Inc.*, No. 2:21-cv-00750-RSL (W.D. Wash.), ECF 1.

Between similar litigations, "(t)here could be a number of reasons why documents appropriately requested and provided in [one] case—even if the subject of those cases seem to overlap—would be irrelevant or burdensome to produce in another case." *Fontana*, 2023 WL 5289557, at *2 (quoting *Goro*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019)) (citing *Nguyen v. Raymond James & Assocs., Inc.*, No. 8:20-CV-195-T-36AAS, 2020 WL 6801874, at *3 (M.D. Fla. Nov. 19, 2020) (finding that "the request as drafted is an overbroad request for a document dump without any concern for whether the scope of the request is proportional to the needs of this case") and *TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 5:18-CV-153-RWS-CMC, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) (finding "that an informal request that seeks wholesale duplicates of discovery produced in other litigation is improper as failing to make the requisite showing of relevance")).

Plaintiffs dedicate nearly two pages to summarizing some of the requests made by the plaintiffs in the Other Lawsuits. *See* Pls.' Mem. at 16–17. Yet, Plaintiffs fail to make a compelling argument on the relevance of many, let alone all, of those requests to the instant case. For example, Plaintiffs believe they are "entitled to what Boppy knew about the *Mainor* death, since it was a similar incident." *Id.* at 17. But they do not (a) explain how the suffocation-related injury in *Mainor* bears on the incident here, or (b) acknowledge that the incident in *Mainor* occurred nearly a year *after* the incident in this case. *See id.*; *Mainor* (N.D. Ala.), ECF 1-1, ¶¶ 30–33 (alleging the *Mainor* incident occurred on October 27, 2020). Not surprisingly, all six of the Other Lawsuits have discovery beyond the bounds of relevance here.

*Sticht*, on which Plaintiffs rely, actually supports Boppy. In that case, the plaintiff originally sought "all previously produced discovery" in another case against the defendant, as Plaintiffs do here. 2023 WL 2206641, at *1. However, the court did *not* grant that blanket request.

Rather, it granted a smaller, more confined production of one particular document and its exhibits, after the plaintiff narrowed her requests and identified which documents may have been relevant. *Id.* at *6. In this regard, *Sticht* further shows that Plaintiffs' blanket requests are improper and objectionable. *See id.* at *5. Plaintiffs' blanket requests for all discovery materials in other cases are overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

### B. PLAINTIFFS' REQUEST IS DISPROPORTIONAL TO THE NEEDS OF THIS CASE AND WOULD VIOLATE PROTECTIVE ORDERS IN SIX OTHER COURTS.

To give effect to Plaintiffs' desired discovery from the Other Lawsuits, the district courts presiding over those cases would have to modify existing protective orders to allow document sharing. The Motion asks the Court to allow Plaintiffs to freely obtain *protected*, confidential information from the other cases. *See* Pls.' Mem. at 8–9. In four of the cases from which Plaintiffs seek cloned discovery, the district courts have entered protective orders that prevent the sharing of such information. Thus, in order to grant Plaintiffs' request here, each district court from which Plaintiffs seek discovery would have to approve the same—*i.e.*, enter a protective order or amend its existing protective order to allow the sharing provision.

#### 1. The Requested Discovery Sharing Was Already Attempted and Failed in Two Courts.

The existing protective orders in the Other Lawsuits restrict the sharing of confidential and protected information to certain groups of individuals, for limited purposes, and pursuant to enumerated procedures. *See, e.g.*, *Limeux* (E.D. La.), ECF 38, ¶ 4 ("Confidential Material may only be disclosed to the following individuals under the following conditions: . . . ").

In *Seich*, the court denied a request to add a sharing provision for plaintiffs in other cases, reinforcing that the protective order there does not allow for cloned discovery. *See* Order Den. Pl.'s Mot. to Mod. Prot. Order, 3:22-cv-00668 (N.D. Fla. Sept. 7, 2023), ECF 58 (hereinafter

"Seich Order"). The plaintiff sought to add a sharing provision to the protective order that would allow him to share "documents and other information with similarly situated litigants involved in active litigation." *Id.* at 1–2. The plaintiff identified the three pending "collateral" lawsuits to share information with—*Limeux*, *Mainor*, and this case. Pl.'s Mot. for Mod. Joint Prot. Order, 3:22-cv-00668 (N.D. Fla. Aug. 14, 2023), ECF 52. The court denied the request. *See* Seich Order.

Citing several other authorities, the *Seich* Court reasoned that a plaintiff must establish two things to justify this type of sharing provision in a protective order: (1) the necessity for a sharing provision in that particular case, and (2) the relevance of the information for the other litigation. *See id.* at 5. The *Seich* plaintiff failed in both regards to convince the court he should be allowed to share discovery with Plaintiffs here and in other matters.

Plaintiffs attempt to disregard the *Seich* court's decision and essentially appeal that decision to this Court. In an empty effort to distinguish the court's ruling, Plaintiffs note that "the Northern District of Florida issued that order more than 18 months after a negotiated protective order entered." Pls.' Mem. at 8. However, Plaintiffs' argument stops there, failing to explain why this passing of time should lessen the importance of that decision or justify cloned discovery. While the *Seich* court briefly acknowledged that reliance on a protective order over this months-long time period should be honored, it also conducted a detailed legal analysis explaining that the plaintiffs did not meet their burden to show necessity and relevance. *See* Seich Order at 5–8. The order states plainly that whether a party seeks a sharing provision in a protective order "at the outset or through modification," the party must show those elements. *Id.* at 5.

In *Mainor*, the plaintiff also requested a sharing provision to allow sharing discovery with plaintiffs in other pending matters, including *Seich*, *Limeux*, and this case. *See* Cross Mot. Prot. Order Containing Sharing Provision, 2:22-cv-1483-ACA (N.D. Ala. May 18, 2023), ECF 24, at 6,

& Ex. A ¶ 4(m). The judge held that a document sharing provision was not necessary to the case. *See* Tr. Status Conf. Judge Axon, 2:22-cv-1483-ACA (N.D. Ala. June 21, 2023).[15] The parties accordingly filed a jointly stipulated, non-sharing protective order. *See* Order, 2:22-cv-1483-ACA (N.D. Ala. July 18, 2023), ECF 32.

Plaintiffs now seek to do an end-run around the courts' decisions in both *Seich* and *Mainor*. For Boppy to produce cloned discovery from those two cases goes against protective orders and standing court decisions that refused to grant an exception for other plaintiffs.

**2. Cloned Discovery Places an Undue Burden on Boppy That is Not Proportional to the Needs of This Case.**

Plaintiffs would like Boppy to embark on an expedition of motion practice across six U.S. jurisdictions in order to modify protective orders, including in courts that have already denied the precise sharing order at issue. On balance, this burden far outweighs any benefits Plaintiffs may derive from shared discovery.

Any discovery request must satisfy the proportionality requirements set forth in Federal Rule of Civil Procedure 26(b)(1). *See Sticht*, 2023 WL 2206641, at *6. "Generally, the greater the relevance of the requested information, the less likely the requested discovery will be disproportionate to the needs of the case." *Id.* However, the value of protecting litigants' reliance on protective orders should outweigh the convenience of one party in a different case. *See Griffith v. Univ. Hosp., L.L.C.*, 249 F.3d 658, 663 (7th Cir. 2001). This balancing holds more strongly when, as here, the materials sought are attainable through other means, including by direct discovery. *See id.*

[15] This transcript can be provided to the Court, if the Court so prefers.

Plaintiffs' request to compel cloned discovery would unduly burden Boppy and this Court. As a preliminary matter, and as previously discussed in detail, the Other Lawsuits are not closely relevant to the present case, so the request is inherently suspect.

Though Plaintiffs argue that "producing what has already been produced is neither costly nor burdensome," they would like Boppy to engage in additional litigation in six other district courts to allow the sharing of confidential information from those cases. The hours of work invested would then be akin to the burden Plaintiffs point to in *Yu Cheng Chen v. Cincinnati Inc.*, 2007 WL 1191342, at *1 (E.D.N.Y. Apr. 20 2007), a decision that held that the burden of 150 hours of work outweighed the benefit of sharing deposition transcripts from similar cases.

Plaintiffs seek cloned discovery solely for the benefit of convenience. Plaintiffs argue that they "trust that the lawyers in other states combatting Boppy are competent." *See* Mot. at 14. Not only is the competence of other counsel besides the point, but this one-sided convenience is not enough to outweigh the protected status of other case materials, especially when Plaintiffs are free to retrieve the materials they need by making their own, direct discovery requests. *See Griffith*, 249 F.3d at 663.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Compel should be denied and this Opposition sustained.

Respectfully Submitted,

**The Boppy Company, LLC**
By Its Attorneys,

_____________ CT30914_____________

Timothy R. Scannell, Esq. (CT28847)
tscannell@boyleshaughnessy.com
Kevin R. Kratzer, Esq. (CT28871)
kkratzer@boyleshaughnessy.com
Walter J. Klimczak III, Esq. (CT30914)
wklimczak@boyleshaughnessy.com
Boyle | Shaughnessy Law, P.C.
280 Trumbull Street, 23rd Floor
Hartford, CT 06103
Phone: (860) 952-9800
Fax: (860) 278-7757

**CERTIFICATION**

This is to certify that a copy of the foregoing was or will immediately be mailed or delivered electronically or non-electronically on January 19, 2024 to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served.

***Plaintiffs' Counsel***

PETER CHRISTOPHER BOWMAN
BBB ATTORNEYS, LLC
3651 MAIN STREET
SUITE 200
STRATFORD, CT 06614
203-562-0900
203-562-0902 (FAX)
filing@bbbattorneys.com

KENNETH JAMES KRAYESKE
BBB ATTORNEYS, LLC
3651 MAIN STREET
SUITE 200
STRATFORD, CT 06614
203-562-0900
203-562-0902 (FAX)
kkrayeske@bbbattorneys.com

***Counsel for Target Corporation***

RENEE W. DWYER
CONWAY STOUGHTON LLC
641 FARMINGTON AVENUE
HARTFORD, CT 06105
(860) 523-8000 (P)
(860) 523-8002 (F)
rdwyer@conwaystoughton.com

CT30914

______________________________
Walter J. Klimczak III, Esq.

# *Exhibit 1*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY SCRICCA, ADMINISTRATOR OF THE ESTATE OF ANGELISE RODRIGUEZ; COLEEN RODRIGUEZ & ANGEL MIGUEL RODRIGUEZ

3:22-CV-01497-RNC

Plaintiffs

VS.

THE BOPPY COMPANY, LLC;
ARTSANA U.S.A., INC. D/B/A CHICCO; &
TARGET CORPORATION D/B/A
TARGET STORE, INC

Defendants

OCTOBER 18, 2023

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO DEFENDANT THE BOPPY COMPANY, LLC

INTRODUCTION

In accordance with the Federal Rules of Civil Procedure, including federal rule 33 and 34, the Plaintiffs Anthony Scricca, administrator of the Estate of Angelise Rodriguez, et al hereby propound the following requests for production to be answered by the defendant, The Boppy Company, LLC, under oath, within thirty (30) days of the filing.

The plaintiff requests that the defendant produce for inspection, copying, testing or sampling, as the case may be, the documents or tangible things described hereinafter, pursuant to Rule 34 of the Federal Rules of Civil Procedure.

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

In answering these Requests for Production, furnish all information available to you including information in the possession of your attorneys, their investigators, or any person acting on your behalf, and not merely such information as is known of your own personal knowledge. If you cannot answer any part of these Requests for Production in full after exercising due diligence to secure the information requested, so state and answer the remainder as fully as possible, stating whatever information or knowledge you have concerning the unanswered or partially unanswered portion.

These Requests for Production are to be considered to be continuing; pursuant to Fed. R. Civ. P. 26 (e) you are requested to provide, by supplementary answers and/or productions of documents, such additional information as you or any person acting your behalf may obtain which will augment or modify your initial answers and/or productions of documents.

DEFINITIONS

In addition to the terms defined in D. Conn. L. Civ. R. 26, the following definitions shall apply to these interrogatories and requests for production.

A. The words "Defendant" and "you" or "your" shall be deemed synonymous and shall be deemed to include any and all agents, servants, employees, attorneys and other representatives of the Defendant, and all other persons acting on that defendant's behalf.

B. "Person" means natural person, corporation, partnership, sole proprietorship, union, association, federation, law firm, professional association, professional corporation, limited liability company, and any other kind of entity.

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

C. "Representative" means any person purporting to act on your behalf including your attorney(s).

D. "Document" shall have the same meaning as stated in Fed. R. Civ. P. 34(a) and Local Rule 26(c), including any printed, typewritten, handwritten, or otherwise recorded matter of whatever character, including, without limitation, letters, minutes, purchase orders, bills, memoranda, telegrams, notes, contracts, leases, drafts, catalogs, brochures, diaries, reports, calendars, interoffice communications, statements, announcements, photographs, tape recordings, motion pictures, electronic mail, computer files, computer databases and any photographic or electronic copies of such materials if Plaintiff does not have custody or control of the originals.

E. In responding to these Requests for Production, please comply with the following instructions:

INSTRUCTIONS

A. In each question when you are asked to "identify" a person, state with respect to each such person his or her:

(1) name,

(2) last known home address and telephone number,

(3) last known business address and telephone number,

(4) last known employer, together with said employer's address, and

(5) said person's relationship to you.

B. In each question wherein you are asked to "identify" any documents, state with respect to each such document the following:

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

(1) its date,

(2) the person originating it,

(3) its current location,

(4) the person in whose possession or under whose control the document is, and

(5) the relationship of said person to you.

C. If any document requested to be produced was but is no longer in Defendant's possession or control, or is no longer in existence, state the following:

(1) whether it is:

(a) missing or lost,

(b) destroyed,

(c) transferred voluntarily or involuntarily to others and, if so, to whom, or

(d) otherwise disposed of; and

(2) with respect to each such document and disposition,

(a) explain the circumstances surrounding an authorization for such disposition and the approximate date thereof, and

(b) state any information available to you which might be helpful in locating originals or copies of the document in question.

D. If you assert any privilege with respect to any document, material or information, with respect to each such claim:

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

(1) identify the document, material or information to which the claim is asserted,

(2) state the basis for the claim of the privilege, and

(3) describe fully the circumstance of the origin of the document, material or information that you claimed is privileged.

(4) In addition, if the claim is asserted as to a document, describe fully the circumstances of the document's disposition, including identifying all persons whom you believe have or may have seen it or become acquainted with its contents.

E. If the Defendant claims any Request for Production is overly broad or otherwise objectionable, the Defendant is requested to respond to the full extent he concedes some responsive information is properly requested and state the respect in which he claims that it is overly broad or otherwise objectionable.

F. Plaintiff is willing to enter into whatever protective order necessary to obtain this information.

## REQUESTS FOR PRODUCTION

1. Copies of any Interrogatories and Requests for Production or other written discovery requests issued to Defendant The Boppy Company, LLC and its responses and objections to those Interrogatories and Requests for Production or that other written discovery in the following cases:

   a. *Wooten et al v. The Boppy Company, LLC, et al*, 2:22-cv-04341-KNS, pending in the United States District Court for the Eastern District of Pennsylvania;

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

b. *Seich* v. *The Boppy Company, LLC*, 3:22-cv-00668-TKW-HTC, pending in the United States District Court for the Northern District of Florida, Pensacola Division;

c. *Parker et al v. The Boppy Company, LLC et al*, 4:22-cv-01320-HEA, pending in the United States District Court for the Eastern District of Missouri;

d. *Clark et al v. The Boppy Company, LLC*, 1:22-cv-02120-JRS-MJD, pending in the United States District Court for the Southern District of Indiana;

e. *Limeux et al v. May Company LLC et al*, 2:23-cv-00190-EEF-JVM, pending in the United States District Court for the Eastern District of Louisiana; and

f. *Mainor v. The Boppy Company, LLC*, 2:22-cv-1483-ACA, pending in the United States District Court for the Northern District of Alabama.

2. All deposition notices, depositions transcripts and requests for production issued to the Corproate Representative of Defendant The Boppy Company, LLC under FRCP 30(b)(6) in the following cases:

a. *Wooten et al v. The Boppy Company, LLC, et al*, 2:22-cv-04341-KNS, pending in the United States District Court for the Eastern District of Pennsylvania;

b. *Seich* v. *The Boppy Company, LLC*, 3:22-cv-00668-TKW-HTC, pending in the United States District Court for the Northern District of Florida, Pensacola Division;

c. *Parker et al v. The Boppy Company, LLC et al*, 4:22-cv-01320-HEA, pending in the United States District Court for the Eastern District of Missouri;

d. *Clark et al v. The Boppy Company, LLC*, 1:22-cv-02120-JRS-MJD, pending in the United States District Court for the Southern District of Indiana;

e. *Limeux et al v. May Company LLC et al*, 2:23-cv-00190-EEF-JVM, pending in the United States District Court for the Eastern District of Louisiana; and

ATTORNEYS &
COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

f. *Mainor v. The Boppy Company, LLC*, 2:22-cv-1483-ACA, pending in the United States District Court for the Northern District of Alabama.

RESPECTFULLY SUBMITTED,

PLAINTIFFS,
ANTHONY SCRICCA
ADMINISTRATOR, ESTATE OF
ANGELISE RODRIGUEZ, ET AL

BY: ______________________
KENNETH J. KRAYESKE, ESQ. –
CT28498
BBB ATTORNEYS, LLC
3651 MAIN STREET
SUITE 200
STRATFORD, CT 06614
T: (203) 562-0900
F: (203) 562-0902
KKRAYESKE@BBBATTORNEYS.COM

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was or will immediately be mailed or delivered electronically or non-electronically on October 18, 2023 to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served.

***Counsel for Boppy Company, LLC and Artsana USA, Inc.***
Kevin R. Kratzer
Boyle, Shaughnessy & Campo, P.C.
280 Trumbull St., 23rd Floor
Hartford, CT 06103
860-925-9800
Fax: 860-278-7757
Email: kkratzer@bsctrialattorneys.com
Email: tscannell@boyleshaughnessy.com

**ATTORNEYS & COUNSELORS**

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

Email: wklimczak@boyleshaughnessy.com

***Counsel for Target Corporation***

RENEE W. DWYER
CONWAY STOUGHTON LLC
641 FARMINGTON AVENUE
HARTFORD, CT 06105
(860) 523-8000 (P)
(860) 523-8002 (F)
rdwyer@conwaystoughton.com

Kenneth J. Krayeske, Esq.

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

# *Exhibit 2*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY SCRICCA, ADMINISTRATOR OF THE ESTATE OF ANGELISE RODRIGUEZ; COLEEN RODRIGUEZ & ANGEL MIGUEL RODRIGUEZ

3:22-CV-01497-RNC

Plaintiffs

VS.

THE BOPPY COMPANY, LLC;
ARTSANA U.S.A., INC. D/B/A CHICCO; &
TARGET CORPORATION D/B/A
TARGET STORE, INC

Defendants

DECEMBER 20, 2023

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION DIRECTED TO DEFENDANT THE BOPPY COMPANY, LLC**

**INTRODUCTION**

In accordance with the Federal Rules of Civil Procedure, including federal rule 33 and 34, the Plaintiffs Anthony Scricca, administrator of the Estate of Angelise Rodriguez, et al hereby propound the following Second Set of Requests for Production to be answered by the defendant, The Boppy Company, LLC, under oath, within thirty (30) days of the filing.

The plaintiff requests that the defendant produce for inspection, copying, testing or sampling, as the case may be, the documents or tangible things described hereinafter, pursuant to Rule 34 of the Federal Rules of Civil Procedure.

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

In answering these Requests for Production, furnish all information available to you including information in the possession of your attorneys, their investigators, or any person acting on your behalf, and not merely such information as is known of your own personal knowledge. If you cannot answer any part of these Requests for Production in full after exercising due diligence to secure the information requested, so state and answer the remainder as fully as possible, stating whatever information or knowledge you have concerning the unanswered or partially unanswered portion.

These Requests for Production are to be considered to be continuing; pursuant to Fed. R. Civ. P. 26 (e) you are requested to provide, by supplementary answers and/or productions of documents, such additional information as you or any person acting your behalf may obtain which will augment or modify your initial answers and/or productions of documents.

DEFINITIONS

In addition to the terms defined in D. Conn. L. Civ. R. 26, the following definitions shall apply to these interrogatories and requests for production.

A. The words “Defendant” and “you” or “your” shall be deemed synonymous and shall be deemed to include any and all agents, servants, employees, attorneys and other representatives of the Defendant, and all other persons acting on that defendant’s behalf.

B. “Person” means natural person, corporation, partnership, sole proprietorship, union, association, federation, law firm, professional association, professional corporation, limited liability company, and any other kind of entity.

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

C. "Representative" means any person purporting to act on your behalf including your attorney(s).

D. "Document" shall have the same meaning as stated in Fed. R. Civ. P. 34(a) and Local Rule 26(c), including any printed, typewritten, handwritten, or otherwise recorded matter of whatever character, including, without limitation, letters, minutes, purchase orders, bills, memoranda, telegrams, notes, contracts, leases, drafts, catalogs, brochures, diaries, reports, calendars, interoffice communications, statements, announcements, photographs, tape recordings, motion pictures, electronic mail, computer files, computer databases and any photographic or electronic copies of such materials if Plaintiff does not have custody or control of the originals.

E. "Subject Products" means various models of the Boppy Newborn Lounger that were designed, manufactured, and/or distributed by the Boppy Company, including but not limited to Boppy Original Newborn Loungers, Boppy Preferred Newborn Loungers, and Pottery Barn Kids Boppy Newborn Loungers.

F. "Communication(s)" shall mean any transfer of information, ideas, opinions, or thoughts by any means, at any time or place, under any circumstances, including, but not limited to, any transfer of information or data in a document, or from one location to another, by electrical, electronic, digital, or other means.

In responding to these Requests for Production, please comply with the following instructions:

INSTRUCTIONS

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

A. In each question when you are asked to "identify" a person, state with respect to each such person his or her:

(1) name,

(2) last known home address and telephone number,

(3) last known business address and telephone number,

(4) last known employer, together with said employer's address, and

(5) said person's relationship to you.

B. In each question wherein you are asked to "identify" any documents, state with respect to each such document the following:

(1) its date,

(2) the person originating it,

(3) its current location,

(4) the person in whose possession or under whose control the document is, and

(5) the relationship of said person to you.

C. If any document requested to be produced was but is no longer in Defendant's possession or control, or is no longer in existence, state the following:

(1) whether it is:

(a) missing or lost,

(b) destroyed,

(c) transferred voluntarily or involuntarily to others and, if so, to whom, or

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

(d) otherwise disposed of; and

(2) with respect to each such document and disposition,

(a) explain the circumstances surrounding an authorization for such disposition and the approximate date thereof, and

(b) state any information available to you which might be helpful in locating originals or copies of the document in question.

D. If you assert any privilege with respect to any document, material or information, with respect to each such claim:

(1) identify the document, material or information to which the claim is asserted,

(2) state the basis for the claim of the privilege, and

(3) describe fully the circumstance of the origin of the document, material or information that you claimed is privileged.

(4) In addition, if the claim is asserted as to a document, describe fully the circumstances of the document's disposition, including identifying all persons whom you believe have or may have seen it or become acquainted with its contents.

E. If the Defendant claims any Request for Production is overly broad or otherwise objectionable, the Defendant is requested to respond to the full extent he concedes some responsive information is properly requested and state the respect in which he claims that it is overly broad or otherwise objectionable.

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

F. Plaintiff is willing to enter into whatever protective order necessary to obtain this information.

**SECOND SET OF REQUESTS FOR PRODUCTION**

1. All contract(s), services agreement(s), addendums, order confirmation(s), and all other documents that memorialize the package, plan, and/or services The Boppy Company, LLC purchased from Meltwater News US Inc. that were in effect at any time between January 1, 2015 through December 1, 2023.

2. Any contract(s), services agreement(s), addendums, order confirmation(s), or another documents that memorialize the package, plan, and/or services The Boppy Company, LLC has purchased from Meltwater News US Inc. since January 1, 2015 through the December 1, 2023.

3. All operations manuals, instructional materials, and/or software/app usage guides that explain the aspects, capabilities, and/or features of the package(s), plan(s), and/or services Meltwater News US Inc. provided to The Boppy Company, LLC at any time between January 1, 2015, through December 1, 2023 relative to information storage, social listening and analytics, social media management, social media monitoring and analysis, consumer intelligence, influencer marketing, sales intelligence, engagement metrics, report generation, and/or data/analytics output.

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

4. Every daily e-mail report Meltwater News US, Inc. provided to The Boppy Company, LLC, either e-mailed, or made otherwise available online or in print by Meltwater News US Inc. at any time between January 1, 2015, through December 1, 2023.

5. Every ad hoc dashboard report Meltwater News US, Inc. provided to The Boppy Company, LLC, either e-mailed, or made otherwise available online or in print by Meltwater News US Inc. at any time between January 1, 2015, through December 1, 2023.

6. Every insight report Meltwater News US, Inc. provided to The Boppy Company, LLC, either e-mailed, or made otherwise available online or in print by Meltwater News US Inc. at any time between January 1, 2015 through December 1, 2023.

7. All Meltwater News US, Inc. search results from forum sites, product review sites, and/or website comment sections relating to the Subject Products from any time between January 1, 2015, through December 1, 2023.

8. All saved searches within the Meltwater News US, Inc. database accessible by The Boppy Company, LLC relating to the Subject Products from any time between January 1, 2015, through December 1, 2023.

ATTORNEYS & COUNSELORS
3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614
41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107
O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

9. All Documents and Communications The Boppy Company, LLC exchanged with Meltwater News US, Inc., either sent or received, whether formal or informal, relating in any way to The Boppy Company, LLC's recall of the Subject Products.

10. All Documents and Communications The Boppy Company, LLC exchanged with Meltwater News US, Inc., either sent or received, whether formal or informal, relating in any way to The Boppy Company, LLC's decision to not recall the Subject Products prior to September 23, 2021.

11. All Documents and Communications The Boppy Company, LLC exchanged with Meltwater News US, Inc., either sent or received, whether formal or informal, from any time between January 1, 2015, through the present, relating in any way to reports of infant deaths associated with infant loungers.

12. All Documents and Communications The Boppy Company, LLC exchanged with Meltwater News US, Inc., either sent or received, whether formal or informal, from any time between January 1, 2015, through the December 1, 2023, relating in any way to the Subject Products posing a potential suffocation or positional asphyxiation risk/hazard.

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

13. All Documents and Communications The Boppy Company, LLC exchanged with Meltwater News US, Inc., either sent or received, whether formal or informal, from any time between January 1, 2015, through December 1, 2023, relating in any way to consumer misuse or improper use of the Subject Products.

14. All Documents and Communications The Boppy Company, LLC exchanged with Meltwater News US, Inc., either sent or received, whether formal or informal, from any time between January 1, 2015, through December 1, 2023, relating to the effectiveness of the Subject Products' labels, warnings, or instructions.

15. All opinions, assessments, studies, reports, publications, presentations, written evaluations, or other advisory materials, whether formal or informal, that The Boppy Company, LLC received from Meltwater US News, Inc. at any time between January 1, 2015, through the December 1, 2023, relating in any way to the safety of the Subject Products; any risks or hazards of the Subject Products; or misuse/improper use of the Subject Products.

RESPECTFULLY SUBMITTED,

PLAINTIFFS,
ANTHONY SCRICCA
ADMINITRATOR, ESTATE OF
ANGELISE RODRIGUEZ, ET AL

BY: ____/s/ Digitally signed 12/20/2023__

ATTORNEYS &
COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

KENNETH J. KRAYESKE, ESQ. –
CT28498
BBB ATTORNEYS, LLC
3651 MAIN STREET
SUITE 200
STRATFORD, CT 06614
T: (203) 562-0900
F: (203) 562-0902
KKRAYESKE@BBBATTORNEYS.COM

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was or will immediately be mailed or delivered electronically or non-electronically on December 20, 2023 to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served.

***Counsel for Boppy Company, LLC and Artsana USA, Inc.***
Kevin R. Kratzer
Boyle, Shaughnessy & Campo, P.C.
280 Trumbull St., 23rd Floor
Hartford, CT 06103
860-925-9800
Fax: 860-278-7757
Email: kkratzer@bsctrialattorneys.com
Email: tscannell@boyleshaughnessy.com
Email: wklimczak@boyleshaughnessy.com

***Counsel for Target Corporation***

RENEE W. DWYER
CONWAY STOUGHTON LLC
641 FARMINGTON AVENUE
HARTFORD, CT 06105
(860) 523-8000 (P)
(860) 523-8002 (F)
rdwyer@conwaystoughton.com

________/s/________________
Kenneth J. Krayeske, Esq.

**ATTORNEYS & COUNSELORS**

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

ATTORNEYS &
COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM

# *Exhibit 3*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Alabama

NAUDIA MAINOR
*Plaintiff*
v.
THE BOPPY COMPANY LLC
*Defendant*

Civil Action No. 2:22-cv-1483-ACA

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Meltwater News US Inc., Attn: Custodian of Records, c/o Becky DeGeorge
2710 Gateway Oaks Drive, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See ATTACHMENT "A" TO SUBPOENA

| Place: , BELT, BRUNER & BARNETT, P.C., 880 Montclair Roa( Suite 300, Birmingham, AL 35213 | Date and Time: 01/05/2024 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/11/23

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

[signature]
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff, Naudia Mainor, who issues or requests this subpoena, are:

W. Ryan Myers, Belt, Bruner & Barnett, P.C., 880 Montclair Road, Ste. 300, Birmingham, AL 35213, T: (205)933-1500, e-mail: ryanm@beltlawfirm.com.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NAUDIA MAINOR, as Mother and Next Friend of E.C.M. Jr., a deceased minor,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | CIVIL ACTION NO.: 2:22-cv-1483-ACA |
| **THE BOPPY COMPANY LLC,** *et al.*, | ) | |
| Defendants. | ) | |

**ATTACHMENT "A" TO SUBPOENA**

TO: Meltwater News US Inc.
Attn: Custodian of Records
c/o Becky DeGeorge
2710 Gateway Oaks Drive
Sacramento, CA 95833

The Subpoena requires that you produce documents. A copy of the Parties' Stipulated Confidentiality and Protective Order (Doc.31), which was entered by the Court on July 18, 2023 (Doc.32), is enclosed for your reference.

You may mail legible copies of the requested records or provide them electronically to the Plaintiff, the party causing the issuance of this subpoena. Should you choose to mail legible copies of the requested records, please address them to W. Ryan Myers, BELT, BRUNER & BARNETT, P.C., 880 Montclair Road, Suite 300, Birmingham, AL 35213. Electronic copies may be e-mailed to ryanm@beltlawfirm.com and dianeb@beltlawfirm.com.

## I. GENERAL INSTRUCTIONS

A. This Subpoena shall be answered by you. Each document production request seeks production of all documents described herein, and any attachments thereto, in your possession, custody, or control, or in the possession, custody, or control of any of your employees, agents, or representatives, and all documents and any attachments that you or any of your employees, agents, or representatives have the legal right to obtain, or have the ability to obtain from sources under your or their control.

B. The public disclosure of any material provided by you under this Subpoena shall be governed by the July 18, 2023, Protective Order entered in this matter (enclosed). If you wish to request "Confidential" treatment for any material provided (that is, material "containing, reflecting, or disclosing any trade secrets, proprietary commercial, financial, or technical information or data, or competitively sensitive information or data that" you have "maintained as non-public or confidential and, if disclosed to persons other than those authorized by" the Protective Order "would reveal to the public or competitors information that could result in a competitive injury to" you), you should designate such material in accordance with the Protective Order.

C. Questions about this Subpoena should be directed to W. Ryan Myers, Belt, Bruner & Barnett, P.C., 880 Montclair Road, Suite 300, Birmingham, AL 35213, telephone: (205) 933-1500, e-mail: ryanm@beltlawfirm.com.

D. You must produce documents "as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(e)(1)(A). "If a subpoena does not specify a form for producing electronically stored information," you "must produce it in a form or forms in which it is ordinarily maintained or in a

reasonably usable form or forms. Fed. R. Civ. P. 45(e)(1)(B).

E. The words "and" and "or" shall be construed conjunctively or disjunctively, as necessary, to make the request inclusive rather than exclusive. The word "including" shall be construed to mean without limitation. The words "any" and "all" shall be construed to make the request inclusive rather than exclusive.

F. The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, to make all definitions and discovery requests inclusive rather than exclusive. The singular shall include the plural and vice versa.

G. To the extent that you withheld, based upon a claim of privilege, any information or documents (including electronic records) that would have been responsive to any information or document production requests contained in the Subpoena, provide the following information:

1. For any document withheld, specify the privilege claimed and the factual basis you contend supports the assertion of the privilege, and identify the document as follows: (a) state the date, nature, and subject matter of the document; (b) identify each author of the document; (c) identify each preparer of the document; (d) identify each person who is an addressee or an intended recipient of the document; (e) identify each person from whom the document was received; (f) state the present location of the document and all copies thereof; (g) identify each person who has, or ever had, possession, custody, or control of the document or any copy thereof; (h) state the number of pages, attachments, appendices, and exhibits; and (i) provide all further information concerning the document and the circumstances upon which the claim of privilege is asserted.

2. For any communication withheld, identify the persons or entities among whom the communication took place, the date of the communication, and the subject.

H. In an affidavit accompanying the response to the Subpoena, you must include a statement, signed under oath or affirmation, indicating that a diligent search of all files, records, and databases for responsive information and documents has been made, that the information contained in the responses to the questions is complete and accurate, and that you have produced true copies of all the documents requested in the Subpoena.

## II. DEFINITIONS

For the purposes of the Subpoena, the following definitions apply:

1. "Boppy Co." means The Boppy Company, LLC, including any agent, subsidiary, affiliate, successor, or predecessor entity, as well as all past and present officers, directors, representatives, agents, and employees of Boppy Co.

2. "Person" means any natural person, entity, group, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, officer, or other business or legal entity, whether private or governmental, and whether foreign or domestic.

3. "Subject Products" means various models of the Boppy Newborn Lounger that were designed, manufactured, and/or distributed by the Boppy Company, including but not limited to Boppy Original Newborn Loungers, Boppy Preferred Newborn Loungers, and Pottery Barn Kids Boppy Newborn Loungers.

4. "Document(s)" shall be interpreted as the terms is used in Federal Rule of Civil Procedure 34 and includes electronically stored information.

5. "Communication(s)" shall mean any transfer of information, ideas, opinions, or thoughts by any means, at any time or place, under any circumstances, including, but not limited to, any transfer of information or data in a document, or from one location to another, by electrical, electronic, digital, or other means.

6. "Relating to" or "related to" shall mean consisting of, referring to, describing, discussing, constituting, evidencing, containing, mentioning, concerning, pertaining to, citing, summarizing, analyzing, or bearing any logical or factual connection to the matter discussed.

## III. DOCUMENT REQUESTS

You are directed to produce copies of all documents and records in your possession, custody, or control relating to:

1. Your contract(s), services agreement(s), addendums, order confirmation(s), and all other documents that memorialize the package, plan, and/or services you provided to Boppy Co., or Boppy Co. purchased from you, that were in effect at any time between January 1, 2015, through September 23, 2021.

2. Any contract(s), services agreement(s), addendums, order confirmation(s), or any other documents that memorialize the package, plan, and/or services you currently provide to Boppy Co. If no such document(s) exist, please produce any such documents memorializing when Boppy Co. quit using your services.

3. All operations manuals, instructional materials, and/or software/app usage guides that explain the aspects, capabilities, and/or features of the package(s), plan(s), and/or services you provided to Boppy Co. at any time between January 1, 2015, through September 23, 2021, relative to information storage, social listening and analytics, social media management, social media monitoring and analysis, consumer intelligence, influencer marketing, sales intelligence,

engagement metrics, report generation, and/or data/analytics output.

4. Every daily e-mail report that you provided, e-mailed, or made available to Boppy Co. at any time between January 1, 2015, through September 23, 2021.

5. Every ad-hoc dashboard report that you provided, e-mailed, or made available to Boppy Co. at any time between January 1, 2015, through September 23, 2021.

6. Every insight report that you provided, e-mailed, or made available to Boppy Co. at any time between January 1, 2015, through September 23, 2021.

7. All search results from forum sites, product review sites, and/or website comment sections relating to the Subject Products from any time between January 1, 2015, through September 23, 2021.

8. All saved searches relating to the Subject Products from any time between January 1, 2015, through September 23, 2021.

9. All Documents and Communications, whether formal or informal, relating in any way to Boppy Co.'s recall of the Subject Products.

10. All Documents and Communications, whether formal or informal, relating in any way to Boppy Co.'s decision to not recall the Subject Products prior to September 23, 2021.

11. All Documents and Communications, whether formal or informal, from any time between January 1, 2015, through the present, relating in any way to reports of infant deaths associated with infant loungers.

12. All Documents and Communications, whether formal or informal, from any time between January 1, 2015, through the present, relating in any way to the Subject Products posing a potential suffocation or positional asphyxiation risk/hazard.

13. All Documents and Communications, whether formal or informal, from any time between January 1, 2015, through September 23, 2021, relating in any way to consumer misuse or improper use of the Subject Products.

14. All Documents and Communications, whether formal or informal, from any time between January 1, 2015, through September 23, 2021, relating to the effectiveness of the Subject Products' labels, warnings, or instructions.

15. All opinions, assessments, studies, reports, publications, presentations, written evaluations, or other advisory materials, whether formal or informal, that you provided to Boppy Co. at any time between January 1, 2015, through the present, relating in any way to the safety of the Subject Products; any risks or hazards of the Subject Products; or misuse/improper use of the Subject Products.

Any charges for providing the requested records will be promptly remitted to you. However, if the charges are more than $100.00, please call prior to sending the records. Should you require payment before sending the records, you may send me a pre-payment invoice at dianeb@beltlawfirm.com or fax it to (205) 933-5500.

*/s/W. Ryan Myers*
**KEITH T. BELT, JR. (BEL-026)**
**W. RYAN MYERS (MYE-014)**
Attorneys for Plaintiff

OF COUNSEL:
**BELT & BRUNER, P.C.**
880 Montclair Road, Suite 300
Birmingham, AL 35213
Telephone: (205) 933-1500
Facsimile: (205) 933-5500
E-mails: keithb@beltlawfirm.com
ryanm@beltlawfirm.com

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 1 of 17

FILED
2023 Jul-17 PM 04:
U.S. DISTRICT COUR
N.D. OF ALABAM

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

**NAUDIA MAINOR, INDIVIDUALLY AND AS MOTHER AND NEXT FRIEND OF E.C.M. JR., A DECEASED MINOR,**

**Plaintiff,**

**v.**

**THE BOPPY COMPANY LLC,**

**Defendant.**

**CIVIL ACTION CASE NO.: 2:22-cv-01483-ACA**

**JOINT MOTION FOR STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER**

IT IS HEREBY STIPULATED AND AGREED, by and among, Plaintiff, Naudia Mainor, and Defendant, The Boppy Company, LLC (collectively, the "Parties"), through their respective undersigned counsel, that the following terms and conditions of this Stipulated Confidentiality and Protective Order (the "Order") shall govern the handling of documents, things, depositions and deposition exhibits, written discovery responses, testimony, portion(s) of any of these things, and any other information produced, given, or exchanged between any Party to this case and any other Party or non-parties in the above-referenced action (collectively, the "Material"). The Parties agree to avoid waiver of privilege or work product

protections through the maximum protections afforded by Federal Rule of Evidence 502(d).

**Confidential Material**

1. Any Party required to produce documents or information, or to provide testimony pursuant to a subpoena or Court Order, may designate as "Confidential" and subject to this Order any Material containing, reflecting, or disclosing any trade secrets, proprietary commercial, financial, or technical information or data, or competitively sensitive information or data that the Producing Party has maintained as non-public or confidential and, if disclosed to persons other than those authorized by this Protective Order, would reveal to the public or competitors information that could result in a competitive injury to the Producing Party (collectively, the "Confidential Material").

2. Any Party or other person or entity giving deposition testimony or counsel for a Party in this action may designate such testimony or any portion thereof, or deposition exhibits or any portion thereof (to the extent not already designated as confidential or protected), as Confidential Material by advising the reporter and all Parties of such designation during the deposition or by letter to the reporter and all Parties within 15 calendar days of receipt of the final transcript of the deposition testimony, except in the event that a hearing on related issues is scheduled to occur before the 15-day period is complete, in which case the 15-day

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 3 of 17

period will be reduced to 3 business days after any Party provides notice that such designation is necessary in light of the upcoming hearing. Deposition testimony and deposition exhibits shall be treated as Confidential Material, as designated, at least until that 15-day period has expired. Transcripts of deposition testimony designated as Confidential Material shall be marked "CONFIDENTIAL MATERIAL – SUBJECT TO PROTECTIVE ORDER" on each page.

3. Confidential Material may be used only for purposes of this litigation and shall not be used for any other purpose. Confidential Material shall not be disclosed to anyone other than those listed in Paragraph 4 of this Order, unless the receiving Party obtains prior written agreement from the producing Party or this Court orders otherwise.

4. Confidential Material may only be disclosed to the following individuals under the following conditions:

a. The Parties to this litigation and their counsel of record, Outside Counsel, and In-House counsel;

b. The parents, affiliates, officers, directors, employees, or agents of the Parties who have a need to know or see the Confidential Material for purposes of this action;

c. The retained experts or consultants of the Parties to this litigation, provided that prior to disclosure, the expert or consultant must execute the attached "Agreement to be Bound by Stipulated Confidentiality and Protective Order";

d. This Court and this Court's personnel, consistent with paragraph 7 below;

e. Any mediator or arbitrator engaged by the Parties to this litigation;

f. During their depositions, or in preparation for their depositions, any deponent or witness in this litigation to whom disclosure is reasonably necessary, unless otherwise agreed by the designating party or ordered by the court;

g. The vendors retained by the Parties to this litigation, to assist in preparing or cataloging discovery, for trial, and/or for hearings including, without limitation, court reporters, litigation support personnel, jury consultants, data retrieval and storage vendors, demonstrative and audiovisual aid companies, and stenographers;

h. The secretarial, paralegal, clerical, duplicating, and data processing personnel of the foregoing;

i. The author or recipient of a document containing the Confidential Material or a custodian or other person who otherwise possessed or knew the information;

j. To the extent contractually obligated, any insurer or reinsurer, and the parties' outside or in-house auditors as necessary in fulfilling their responsibilities in respect to this matter;

k. Regulatory authorities if required by such regulatory body; and

l. Other persons only after notice to all parties and upon order of the Court, or upon written consent of the Parties (counsel shall respond to any request for written consent within 15 days after receiving the request); and

5. Designation of any document as "Confidential" must be made before a copy of the document is disclosed or produced. Each page of any document subject to this Order shall be stamped or otherwise affixed with the legend "CONFIDENTIAL" in a manner that does not interfere with the legibility of the

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 5 of 17

document to indicate that it is subject to this Order. Any confidential designation which is inadvertently omitted subsequent to the Court's Order may be corrected by written notification to opposing counsel.

6. Nothing contained in this Order shall be construed to restrict the use or disclosure of Confidential Material at trial, as exhibits during depositions, or in connection with motions filed with the Court. Further, nothing herein shall be construed to limit any Party's ability to object to the admissibility of Confidential Material at trial. The foregoing provision shall not apply to any documents that have already otherwise become publicly available.

7. If either Party seeks to file any of the Confidential Material with the Court, they shall seek to file such documents under seal pursuant to the Local Rules of this Court. Moreover, the use of Confidential Material during any public trial shall be addressed by the parties and Court in advance of any such trial.

8. If counsel for a Party receiving Confidential Material objects to that designation in whole or in part, counsel shall serve on the designating Party a written objection describing with particularity the grounds for objection within twenty-one (21) days. Counsel for the designating Party shall respond to the objection in writing within twenty-one (21) days, and state with particularity the grounds in support of the designation and how/why it is appropriate for the information at hand. If the designating Party does not timely respond to the objection, the objection stands and

the challenged designation is deemed void. If a timely written response is made to the objection, counsel shall confer in good faith within ten (10) days by phone in an effort to resolve the dispute. If the dispute cannot be resolved, the proponent of the challenged designation shall present the dispute to this Court. The Parties may, by written agreement, enlarge the deadlines set forth in this paragraph.

9. To the extent consistent with applicable law, the inadvertent disclosure of Confidential Material that should have been designated as such shall not be deemed to waive a Party's claim of confidentiality, in whole or in part, as to the material disclosed. Inadvertent disclosures may be rectified by written notification given at any time after disclosure to all Parties receiving it, and such notice shall constitute a designation of the material as Confidential Material under this Order.

10. At the request of a non-party subpoenaed by a Party in this action, this Protective Order shall apply to the documents, information, and testimony discovered from that non-party. Following any such request, the term "Party" as used in this Protective Order shall be interpreted to include such subpoenaed non-party so that the subpoenaed non-party receives the protections contemplated by this Protective Order with respect to Confidential Material produced by that non-party.

11. If any Party or counsel learns, by inadvertence or otherwise, that Confidential Materials have been disclosed to anyone under any circumstance not authorized by this Order, that person must immediately: (1) notify the designating

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 7 of 17

Party by phone and email; (2) use its best efforts to retrieve all unauthorized copies of the Confidential Material; (3) inform the person to whom the unauthorized disclosures were made of all of the terms of this Order; and (4) request that such person abide by the conditions of this Order.

12. Inadvertent failure to designate information or material, including deposition transcripts, as "Confidential" shall not constitute a waiver of such claim and may be corrected by prompt supplemental written notice designating such material as "Confidential," in which event the designating Party shall, at its own expense, provide new copies of the newly designated materials to the receiving Parties. The Parties receiving such supplemental written notice shall thereafter treat the information and materials so designated as "Confidential," and such information or materials shall be fully subject to this Order as if they had been initially so designated. When information or material is subsequently designated as "Confidential" all receiving parties shall in good faith assist the producing Party in retrieving such material from all persons to whom they provided such material before it was designated as "Confidential," but who as a result of that subsequent designation are not entitled to possess such material under the terms of this Order, and shall prevent further disclosures except as authorized under the terms of this Order.

13. The following information shall not be considered Confidential Material under this Order: (a) information in the public domain; (b) information that becomes part of the public domain after its disclosure to a Party as a result of a publication not involving a violation of this Order; (c) information already known to a Party through proper means prior to disclosure; and (d) information that is or becomes available to a Party from a source other than the Party asserting confidentiality that obtained the information lawfully and under no obligation of confidentiality.

14. The Producing Party shall have a continuing duty to periodically review materials designated as Confidential Material under this Protective Order. The Producing Party shall exercise reasonable care and diligence in conducting periodic reviews to ensure that only information that meets the definition of Confidential Material, as set forth in this Protective Order, is designated as such. The Producing Party must conduct reviews at least semiannually; however, nothing in this Order prohibits the Producing Party from conducting such reviews with greater frequency.

If, at any time, the Producing Party determines that any material previously designated as Confidential Material no longer qualifies for protection under this Order, the Producing Party shall promptly notify the receiving Party in writing and provide a revised version of the material with the Confidential Material designation removed. Upon receipt of such notification, the receiving Party shall promptly return

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 9 of 17

or destroy any previously produced copies of the material bearing the Confidential Material designation. The duty to periodically review and remove Confidential Material designations shall survive the termination of this Protective Order and continue until all materials subject to this Order are no longer Confidential Material or are returned to the Producing Party.

**<u>Non-Waiver Pursuant to Federal Rule of Evidence 502(d)</u>**

15. The production of documents, electronically stored information ("ESI") or other Material subject to the attorney-client privilege, work product doctrine or any other privilege or immunity ("Privileged Information"), whether inadvertent or otherwise, does not constitute a waiver of any applicable privilege or protection from discovery in this action or in any other federal or state proceeding.

a. If a receiving Party discovers that it is in receipt of a document or ESI that it reasonably believes might contain Privileged Information, it shall notify the producing Party, and identify the document in question, within ten (10) business days of such discovery.

b. Upon discovery by a producing Party (whether by notice from the receiving Party, or otherwise) that it did or may have produced Privileged Information, the producing Party shall, within ten (10) days of such discovery, request the return of such

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 10 of 17

Privileged Information by sending a written notification ("Clawback Letter") to the receiving Party. The Clawback Letter shall (i) identify the documents or ESI in question by Bates number or otherwise; (ii) identify the basis on which the privileged information should have been withheld from production; and (iii) provide a privilege log entry for each identified document or a cross reference to an existing privilege log entry for such documents. The requirements in this paragraph apply equally to instances in which a producing Party discovers during a deposition that it did or may have produced Privileged Information. For purposes of this protocol, "discovery" shall mean "actual notice;" production of Privileged Information alone is insufficient to constitute actual notice.

c. Upon receipt of a Clawback Letter, the receiving Party shall promptly destroy or delete all documents or ESI containing Privileged Information identified in the letter, and all reproductions or summaries thereof regardless of whether the receiving Party plans to challenge the claim of privilege. The receiving Party shall follow these procedures regardless of whether a document is comprised fully or partially of Privileged

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 11 of 17

Information. The producing Party shall, within twenty (20) business days of the date of the Clawback Letter, reproduce any document or ESI that is comprised only partially of Privileged Information with the Privileged Information redacted.

d. If a receiving Party disagrees with a claim of privilege set forth in a Clawback Letter, it shall notify the producing Party and provide the basis for disputing the privilege claim in writing. The producing Party must preserve the information claimed to be privileged or otherwise protected until the claim is resolved. Thereafter, the Parties shall meet and confer in a good faith attempt to resolve the dispute.

e. In the event that the Parties do not resolve their dispute, the receiving Party may bring a motion for a determination of whether a privilege applies. If such a motion is made, the producing Party shall submit to the Court, under seal and for in camera review, a copy of the disputed Privileged Information in connection with its motion papers. This in camera submission to the Court shall not constitute a waiver of any privilege or protection. Any motion to determine whether a privilege applies shall be filed no later than thirty (30) days after the Parties meet

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 12 of 17

and confer. All documents and ESI identified in any Clawback Letter shall be included in the privilege logs produced by the Parties. The obligations of the Parties set forth in this section apply irrespective of the care taken by the producing Party to prevent inadvertent disclosure.

f. Except as expressly set forth herein, nothing in this section, or elsewhere in this stipulation, shall limit the bases on which a receiving Party may challenge the assertion of any privilege or protection by the producing Party.

g. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

h. Nothing herein shall prevent the receiving Party from challenging the propriety of the attorney-client privilege or work product privilege or other applicable privilege or immunity designation by submitting a written challenge to the Court, but such a challenge does not relieve a receiving Party of its obligation to return or delete materials pursuant to sub-part (c)

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 13 of 17

above, and the receiving Party shall not assert as a basis for the challenge the fact or circumstances of the prior production of those materials. If the receiving Party submits such a challenge to the Court, the producing Party must promptly present the material to the Court under seal for a determination of the claim.

i. The receiving Party shall not use or disclose a document or information for which a claim of privilege or immunity is made pursuant to this Paragraph for any purpose until the matter is resolved by agreement of the Parties or by the Court.

j. In addition to any other obligation to preserve documents, the producing Party must preserve any documents recalled under this Paragraph for the duration of this litigation.

**Other Matters**

16. This Order does not deprive any Party of its right to object to discovery by any other Party or on any otherwise permitted ground. This Order is entered without prejudice to the right of any Party to move the court for modification of or relief from any of its terms.

17. Any person or Party subject to this Order who in another proceeding becomes subject to a motion to disclose another Party's information designated Confidential pursuant to this Order shall promptly notify that Party of the motion so

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 14 of 17

that Party may have an opportunity to appear and be heard in the other proceeding. Such notice must be in writing and shall include a copy of the motion.

18. Upon final settlement or other conclusion of this litigation, including any appeal, every Party subject to this Order must either return all original Confidential Material to the originating source or maintain and keep all Confidential Material confidential in accordance with this Order.

19. The Parties agree that this Court has and retains jurisdiction during and after this action is terminated for the purpose of enforcing this Protective Order.

20. This Order shall survive the final termination of the case and remains in full force and effect unless modified by court order or by written stipulation of the Parties.

Respectfully submitted this the 30th day of June 2023


/s/ W. Ryan Myers
Keith T. Belt, Jr. (BEL-026)
W. Ryan Myers (MYE-014)

*Counsel for Plaintiff, Naudia Mainor*

**OF COUNSEL:**
BELT & BRUNER, P.C.
800 Montclair Road, Suite 300
Birmingham, AL 35213
Telephone: (205) 933-1500
Facsimile: (205) 933-5500
keithb@beltlawfirm.com
ryanm@beltlawfirm.com

/s/ Shaun A. DeCoudres
Shaun A. DeCoudres (ASB-5170-N77D)

*Counsel for Defendant, The Boppy Company, LLC*

**OF COUNSEL:**
CARR ALLISON
100 Vestavia Parkway
Birmingham, AL 35242
Telephone: (205) 949-2933
Facsimile: (205) 822-2057
sdecoudres@carrallison.com

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 15 of 17

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NAUDIA MAINOR, INDIVIDUALLY AND AS MOTHER AND NEXT FRIEND OF E.C.M. JR., A DECEASED MINOR,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION CASE NO.: 2:22-cv-01483-ACA** |
| **THE BOPPY COMPANY LLC,** | ) | |
| **Defendant.** | ) | |

**JOINT PROPOSED ORDER APPROVING STIPULATED CONFIDENTIALITY AND PROTECTIVE AGREEMENT**

This case is before the Court based on the Joint Motion Approving Stipulated Confidentiality and Protective Agreement (Doc. __). The motion is supported by good cause. Accordingly, it is ORDERED that:

1. The motion is **GRANTED**, and the Parties shall abide by the Joint Stipulated Confidentiality and Protective Agreement.

**DONE AND ORDERED** this ____day of ________________, 20____.

_______________________________
Annemarie Carney Axon
United States District Judge

Copies furnished:
All counsel of record

Case 2:22-cv-01483-ACA Document 31 Filed 07/17/23 Page 16 of 17

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NAUDIA MAINOR, INDIVIDUALLY AND AS MOTHER AND NEXT FRIEND OF E.C.M. JR., A DECEASED MINOR,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION CASE NO.: 2:22-cv-01483-ACA** |
| **THE BOPPY COMPANY LLC,** | ) | |
| **Defendant.** | ) | |

**AGREEMENT TO BE BOUND BY STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER**

The undersigned hereby acknowledges that he/she has read the Stipulated Confidentiality and Protective Order in the above-captioned action and attached to this Agreement, understands its terms, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Alabama for the purpose of proceedings relating to my performance under, compliance with or violation of the Confidentiality and Protective Order.

The undersigned understands that the terms of the Stipulated Confidentiality and Protective Order obligate him/her to use materials designated as

"CONFIDENTIAL" or substantially equivalent language, in accordance with the Stipulated Confidentiality and Protective Order solely for purposes of the above-captioned action. The undersigned shall not disclose any information contained in materials designated as "CONFIDENTIAL" to any other person or entity.

The undersigned agrees that at the conclusion of the litigation, he/she will return all confidential information to the Party or attorney from whom he/she received it.

The undersigned understands that disclosure of information designated "CONFIDENTIAL" in violation of the Confidentiality and Protective Order may constitute contempt of court.

I declare under penalty of perjury that the foregoing is true and correct.

Date: ______________________________

Printed Name: ______________________________

Signature: ______________________________

Case 2:22-cv-01483-ACA Document 32 Filed 07/18/23 Page 1 of 2

FILED
2023 Jul-18 AM 08:
U.S. DISTRICT COUR
N.D. OF ALABAM

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NAUDIA MAINOR, individually and as mother and next friend of E.C.M. Jr., deceased minor,** | ] | |
| **Plaintiffs,** | ] | |
| **v.** | ] | **2:22-cv-1483-ACA** |
| **THE BOPPY COMPANY LLC,** | ] | |
| **Defendant.** | ] | |

**ORDER**

The parties in this case filed cross-motions for protective orders. (Docs. 21, 24). After the June 21, 2023 teleconference, the parties represented to the court that they have resolved their disputes. They now move for entry of a stipulated confidentiality and protective order (doc. 31) as well as their stipulation regarding discovery of electronically stored information and hard copy documents (doc. 31-1). The court **GRANTS** the motion. The stipulated confidentiality and protective order can be found at docket entry 31. The stipulation regarding electronically stored information and hard copy documents can be found at docket entry 31-1.

In light of the parties' stipulations, the court **FINDS AS MOOT** the cross-motions for protective orders. (Docs. 21, 24).

**DONE** and **ORDERED** this July 18, 2023.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

# *Exhibit 4*

**STATE OF CONNECTICUT**
**Office of the Chief Medical Examiner**
11 Shuttle Road, Farmington, CT 06032

**M.E. CASE NUMBER: 19-19882-Rodriguez, Angelise Yuly Maria**

Date of Death: **11/10/2019**
County of Death: **New Haven**
Autopsy Performed By: **Maura DeJoseph, D.O.**

Time of Death: **03:43 P.M.**
City of Death: **New Haven**
Autopsy Date: **11/12/2019**

---

## FINAL ANATOMIC DIAGNOSES

I. Blunt Impact Injury of Head and Neck, with:
   A. Cutaneous Abrasion and Contusion
   B. Skull Fracture, Linear, Right Parietal
   C. Subdural Hemorrhage, Spinal Canal
   D. Anoxic Ischemic Encephalopathy (890 Grams)
   E. Bulging Fontanelle and Diastasis of Sutures
   F. Cervical Spinal Nerve Root Hemorrhages
   G. Spinal Cord Infarct, Upper Cervical
   H. See Neuropathology Report
   I. Complicated by
      1. Acute Kidney Injury with Necrosis
      2. Esophageal Ulcer
      3. Ischemic Ulcer, Colon

II. Blunt Impact Injury of Lower Extremity with Cutaneous Contusion

III. 4 Month Old Infant Normally Developed Infant Girl with Weights and Measurements Appropriate for Age

---

**CAUSE OF DEATH**: BLUNT IMPACT INJURY OF HEAD AND NECK WITH SKULL FRACTURE

**MANNER OF DEATH**: HOMICIDE (INJURED BY OTHER)

# *Exhibit 5*

State of Connecticut
Judicial Branch



# Criminal/Motor Vehicle Conviction Case Detail

***Information is accurate as of December 01, 2023 05:13 AM***

## Defendant Information

**Last, First:** RODRIGUEZ ANGEL

**Represented By:** 434281 MR PEDEVILLANO

**Birth Year:** 1985

## Docket Information

**Docket No:** NNH -CR21-0232846-T

**Court:** New Haven JD

**Costs:**

**Original Arresting Agency:** LOCAL POLICE NEW HAVEN

**Original Arrest Date:** 1/2/2021

**Sentenced Date:** 12/22/2022

**Overall Sentence Information**
Committed to Department of Corrections and Probation Ordered

| Statute | Description | Class | Type | Occ | Offense Date | Plea | Verdict Finding | Verdict Date | Fine | Fee(s) |
|---|---|---|---|---|---|---|---|---|---|---|
| 53-21 | Risk Of Injury To Child | C | Felony | 1 | 11/8/2019 | Nolo Contendere | Guilty | 12/22/2022 | $0.00 | $0.00 |

**Sentenced:** 8 Years Jail, Execution Suspended After 2 Years, Probation 3 Years

Back



Copyright © 2023, State of Connecticut Judicial Branch

# *Exhibit 6*

# INCIDENT/INVESTIGATION REPORT

**INCIDENT DATA**

| | |
|---|---|
| Agency Name | *New Haven Police Department* |
| ORI | *CT0009300* |
| Case# | *19-045165* |
| Date / Time Reported | *11/08/2019 14:05 Fri* |
| Last Known Secure | *11/08/2019 14:05 Fri* |
| At Found | *11/08/2019 14:05 Fri* |
| Location of Incident | *458 MIDDLETOWN AVE - APT12, New Haven* |
| Gang Relat | NO |
| Premise Type | *Residence/home* |
| Beat/Tract | 90 |

| # | Crime Incident(s) | ( ) | Weapon / Tools | Activity | Entry | Exit | Security |
|---|---|---|---|---|---|---|---|
| #1 | *Murder & Non Negligent Manslaughter* *001* | (Com) | *Personal Weapons (hands/fists)* | *N* | | | |
| #2 | Crime Incident | ( ) | | | | | |
| #3 | Crime Incident | ( ) | | | | | |

MO

**VICTIM**

# of Victims *1* Type: INDIVIDUAL/ NOT LAW Injury: Other Major Injury (gunshot,burns)

| | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|---|
| V1 | *RODRIGUEZ, ANGELICE* | *1,* | *06/25/2019* | *0* | *W* | *F* | *1CH* | *Resident* | |

Home Address: *458 MIDDLETOWN AVE - 12, New Haven, CT 06513-*
Email:
Home Phone:
Employer Name/Address:
Business Phone:
Mobile Phone:

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

**OTHERS INVOLVED**

CODES: V- Victim (Denote V2, V3) WI = Witness IO = Involved Other RP = Reporting Person (if other than victim)

Type: INDIVIDUAL/ NOT LAW ENFORCEMENT Injury:

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|---|
| *OT* | *RODRIGUEZ, ANGEL M* | | *07/05/1985* | *34* | *W* | *M* | | *Non-Resident* | |

Home Address: *458 MIDDLETOWN AVE - 12 NEW HAVEN, CT 06513*
Email:
Home Phone: *203-901-8628*
Employer Name/Address:
Business Phone:
Mobile Phone:

Type: INDIVIDUAL/ NOT LAW ENFORCEMENT Injury:

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|---|
| *OT* | *RODRIGUEZ, ANGEL M* | | *07/05/1985* | *34* | *W* | *M* | | *Non-Resident* | |

Home Address: *458 MIDDLETOWN AVE - 12 NEW HAVEN, CT 06513*
Email:
Home Phone: *203-901-8628*
Employer Name/Address:
Business Phone:
Mobile Phone:

**PROPERTY**

1 = None 2 = Burned 3 = Counterfeit / Forged 4 = Damaged / Vandalized 5 = Recovered 6 = Seized 7 = Stolen 8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Officer/ID# *TRUHART, JOHN (66)*

Invest ID# *CUDDY, KRISTINE N (829)* Supervisor *DECRESCENZO, LOUIS (827)*

Status | Complainant Signature | Case Status *Cleared By Arrest* *01/02/2021* | Case Disposition: | Page 1

# Incident Report Additional Name List

New Haven Police Department

OCA: 19-045165

## Additional Name List

| | Name Code/# | | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|---|---|
| 1) | OT | 3 | RODRUGUEZ, COLEEN | | 07/04/1983 | 36 | W | F |
| | | Address | 458 MIDDLETOWN AVE Apt. 12, NEW HAVEN, CT 06513- | | H: - - | | | |
| | | Empl/Addr | | | B: - - | | | |
| | | | | | Mobile #: - - | | | |
| 2) | OT | 4 | Juvenile | | | | | |
| | | Address | | | H: - - | | | |
| | | Empl/Addr | | | B: - - | | | |
| | | | | | Mobile #: - - | | | |

# INCIDENT/INVESTIGATION REPORT

*New Haven Police Department*

Case # *19-045165*

Status Codes 1 = None 2 = Burned 3 = Counterfeit / Forged 4 = Damaged / Vandalized 5 = Recovered 6 = Seized 7 = Stolen 8 = Unknown

| DRUGS | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

*BRANGI, J. (469), BRANGI, J. (469), LUIS, J. (67), WITYAK, S. (416), MILLER, R.F. (764)*

Suspect Hate / Bias Motivated:

## INCIDENT/INVESTIGATION REPORT

Narr. (cont.) OCA: 19-045165 *New Haven Police Department*

NARRATIVE

# REPORTING OFFICER NARRATIVE

*New Haven Police Department*

| OCA |
|---|
| *19-045165* |

| Victim | Offense | Date / Time Reported |
|---|---|---|
| *JUVENILE* | *FAMILY OFFENSES - NON VIOLENT* | *Fri 11/08/2019 14:05* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

On 11-8-19 at approximately 1405 hours, I was dispatched to 458 Middletown Ave apt 12 for the report of an unresponsive infant. Upon arrival only NHFD engine 10 was on scene. Angel Rodriguez and his child, Angelice Rodriguez, were already enroute to Yale Pediatric Hospital at 1 Park St via AMR ambulance. NHFD was dispatched at 1356 hours and arrived at 1403 hours.

I spoke to Capt. Tom Fitzgerald of NHFD. He stated when they arrived, Rodriguez told them Angelice was in the upstairs bedroom not breathing. Capt. Fitzgerald asked Rodriguez how long to which he responded 10 minutes. Capt Fitzgerald and members of NHFD engine 10 went to the upstairs bedroom and found Angelice laying on the bed unresponsive. They immediately started CPR before AMR transported to the hospital.

Sgt Koval also arrived on scene and made proper notifications. ISU and B of I responded to the scene. Ofc Luis responded to 1 Park St to meet with Rodriguez when he arrived with Angelice. Refer to his supplement for statements from Rodriguez. I guarded the front door of the apartment, and no one entered during this time. Ofc Wityak relieved me at the front door at 1600 hours. I contacted YCS and made a referral.

My BWC was activated.

Nothing further.

# Incident Report Suspect List

*New Haven Police Department*

OCA: *19-045165*

1

| Name (Last, First, Middle) | Also Known As | Home Address |
|---|---|---|
| RODRIGUEZ, ANGEL M | RODRGUEZ, ANGEL; RODRIGUEZ, ANGEL | 458 MIDDLETOWN AVE - 12<br>NEW HAVEN, CT 06513<br>203-901-8628 |

Business Address

| DOB | Age | Race | Sex | Eth | Hgt | Wgt | Hair | Eye | Skin | Driver's License / State |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/05/1985 | 35 | W | M | H | 508 | 170 | BLK | BRO | OLV | 077538804 CT |

Scars, Marks, Tattoos, or other distinguishing features

*TATT LEFT NECK*

| *Reported Suspect Detail* Suspect Age | Race | Sex | Eth | Height | Weight | SSN |
|---|---|---|---|---|---|---|
| | | | | | | |

| Weapon, Type | Feature | Make | Model | Color | Caliber | Dir of Travel / Mode of Travel |
|---|---|---|---|---|---|---|
| | | | | | | |

| VehYr/Make/Model | Drs | Style | Color | Lic/St | VIN |
|---|---|---|---|---|---|
| | | | | | |

Notes

Physical Char

*Build, MEDIUM*
*Hair Length, Long*
*Hair Style, Straight*
*Hair Facial, Mustache*
*Hair Facial, Slight Beard*
*Hands, RIGHT HANDED*

# CASE SUPPLEMENTAL REPORT



*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *WITYAK, SHANE (416)* **Date / Time:** *11/08/2019 16:29:39, Friday*

**Supervisor:** *DECRESCENZO, LOUIS (827)* **Supervisor Review Date / Time:** *11/08/2019 17:03:38, Friday*

**Contact:** **Reference:** *Supplement*

On 11/8/19 at 1532 hours I was dispatched to 458 Middletown Avenue apartment 12 to guard crime scene at this location. Upon my arrival I relieved Officer Truhart at 1600 hours. While guarding the front door of the crime scene, no unauthorized persons entered or exited the crime scene. The crime scene was released by Detective Parker at 1636 hours. The front door of apartment 12 was locked and secured prior to police departure.

No further action.

Investigator Signature Supervisor Signature

# CASE SUPPLEMENTAL REPORT

Printed: 04/23/2023 20:39

*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *LUIS, JEFFREY (67)* **Date / Time:** *11/08/2019 17:01:54, Friday*

**Supervisor:** *CANNING, BRENDAN Jr (747)* **Supervisor Review Date / Time:** *11/08/2019 17:35:39, Friday*

**Contact:** *Rodriguez, Angel M*
*458-12 Middletown Ave, New Haven*
*203-901-8628*

**Reference:** *Supplement*

On 11/08/19 at approximately 1400 hours, I was dispatched to 1 Park St (Yale Pediatric Emergency Room) for the report of an unresponsive 4 month old girl from 458 Middletown Ave Apt#12.

Upon my arrival at 1 Park St, I met with Sgt. Miller who was also on scene. We stood outside a room in the Emergency Room as the child later identified as Angelice Rodriguez was being administered medical attention. The child's father Angel Rodriguez was also on scene.

I spoke to Angel Rodriguez, who stated he was watching his daughter Angelice all day. He stated at about 1300 hours, he got a call from his wife Coleen Rodriguez, also the child's mother. He stated she called to remind him to feed Angelice. He stated he then went to the store and when he returned he laid Angelice on the bed in their bedroom. He stated he laid her on her back and put a could pillows around her for support. He stated he then went downstairs to begin prepare her food. He stated while he waited he went outside to have a smoke and received a phone call from a friend. He stated after the phone call ended he went upstairs to check on Angelice and immediately saw that she was face down on the bed. He stated he turned her over quickly and saw she was discolored and did not appear to be breathing. He stated he called 911 and began attempting CPR. When I asked how much time had passed from when laid her down and went to check on her, he stated he was not sure. He stated he put her down around the time Coleen called him and that he went to check on her after he ended his phone call with a friend. He then checked his cell phone call log and saw that he ended that call at about 1346 hours. He stated she may have been on the bed for about an hour.

I spoke to Angelice's mother briefly who was at work at the time of the incident. She stated Angelice had been sick in the past and had a bad cough the night prior.

Sgt. Miller was on scene and informed Detectives from ISU Investigative Service Unit would be responding.

I contacted DCF and spoke to careline worker Linda Devito. I informed Linda of the incident and its details.

Angelice was then moved to room#752 in the Pediatric Intensive Care Unit. I spoke to a Dr. Eidman who stated he did not observe any obvious signs of trauma in his opinion. He stated Angelice was in a very severe condition and was not breathing on her own yet. I was then relieved by Officer Brangi at approximately 1645 hours. Angelice was still in critical condition and not breathing on her own at that time.

No further action taken at that time.

Investigator Signature Supervisor Signature

New Haven Police Department OCA: **19045165**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *PARKER, DAVID (722)* **Date / Time:** *12/01/2019 11:25:21, Sunday*

**Supervisor:** *BOYCE, JARROD (707)* **Supervisor Review Date / Time:** *12/19/2019 21:37:37, Thursday*

**Contact:** **Reference:** *Bureau Of Identiification*

On 11-8-19 Sgt Boyce requested I respond to 458 Middletown Ave for a sudden death investigation. He informed me a five-month-old was in care of the father was found in bed not breathing. The baby was brought to 20 York St, Yale New Haven Hospital for treatment and was placed on a breathing machine. See Officer Truhart initial report under this case number for further details.

At approximately 1545 hours, I arrived on scene and spoke with Detective Cuddy who gave me the following information. The baby, Angelice Rodriguez was in care of the father Angel Rodriguez. The mother was at work and the older sibling was at school. The father gave the baby a bottle, after the baby was done with the bottle, he came upstairs to the bedroom and put the baby on the bed for a nap. He placed the baby on her back and left the baby alone for a little bit while he went to the store down the street. He came back from the store and checked on the baby, she was on her back sleeping. Mr. Rodriguez went down stairs and smoked Marijuana, after he was finished he came back upstairs and saw that Angelice was on her stomach. He turned her over and noticed she was not breathing and she had vomited on the bed sheet. He called 911, the New Haven Fire Department Paramedics arrived on scene and treated Angela. The paramedics gave her medication called Narcan. The baby started to breathe. The paramedics transported the baby to Yale New Haven Children's Hospital for further treatment. The baby was placed on life support now. Detective Cuddy request I take photographs of the apartment and take the bed sheets and the baby bottle which was downstairs in the living room.

Detective Cuddy and I did a walkthrough of the apartment. We went upstairs to the bedroom to the left. I entered the bedroom, in front of me was the bed with green bed sheets and assorted pillows and a baby pacifier. The room was unkept. At the end of the bed was a baby portable crib. There was a laundry basket with clothes and other items scattered throughout the bedroom. Next to the bed was a night stand. On top of the nightstand I saw a yellow pill bottle containing numerous white pills. On the green bedsheet next to the baby pacifier I saw what appeared to be a stain. I was informed the baby vomited or spit up on the sheet causing the stain on the sheet. There were what appeared to be burn holes through the sheet all over. I went down stairs into the living room. Between the two couches in the corner of the room was a brown table. On top of the table was a baby bottle containing white type fluid. I walked through the living room into the kitchen. In front of me as I entered the kitchen was a kitchen table. On top of the table was a green leaf like substance on top of a picture. Detective Cuddy request I take the green leaf like substance. She informed me I did not have to take the yellow pill bottle with the white pills which was in the bedroom.

I placed number stanchion next to the following items.
Item#1= Green fitted bedsheet.
Item#2= Baby pacifier.
Item #3= Green leaf like substance.
Item#4= Baby bottle.

Prior to me collecting the items I took digital photographs. I collected the items and released the scene at

Investigator Signature Supervisor Signature

# CASE SUPPLEMENTAL REPORT



*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CON IDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *PARKER, DAVID (722)* **Date / Time:** *12/01/2019 11:25:21, Sunday*

**Supervisor:** *BOYCE, JARROD (707)* **Supervisor Review Date / Time:** *12/19/2019 21:37:37, Thursday*

**Contact:** **Reference:** *Bureau Of Identiification*

approximately 1638 hours. I transported the items back to one Union Ave and secured them in the laboratory locker.

On 11-16-19, I entered the laboratory and retrieved the items from the locker. I took digital photographs of the following items.

Item#1= Green fitted sheet with what appeared to be burn holes. And a stain on the sheet. I found small amounts of green leaf like substance throughout the bedsheet. I collected the small pieces of the green substance and tested a sample for the presence for Marijuana using a Sirchie #8 tester. I tested positive for the presence of Marijuana. I packaged the rest of the small pieces of the green leaf like substance. I photographed the tester with the result.

Item#2= Orange Baby pacifier.

Item#3= Green leaf like substance. Using Sirchie #8 I took a sample and tested it for the presence of Marijuana. The test was positive. Took digital photograph of the tester.

Item#4= Baby bottle containing white liquid.

I packaged the items and logged them into the property room as evidence. I downloaded the pictures on the Bureau of Identification computer.

Nothing Further.

Investigator Signature Supervisor Signature

# CASE SUPPLEMENTAL REPORT



*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *CUDDY, KRISTINE N (829)* **Date / Time:** *01/07/2020 11:30:20, Tuesday*

**Supervisor:** *AGOSTO, YESSENNIA (742)* **Supervisor Review Date / Time:** *01/09/2020 11:01:14, Thursday*

**Contact:** **Reference:** *Supplement*

On Friday, November 8, 2019 at approximately 2:30pm I received a call from Sergeant Ettienne who sent me to 1 Park Street, Yale New Haven Pediatric Hospital, for the call of an unresponsive baby. The call was dispatched to patrol officers at approximately 2:05pm.
Detective Kyle and I arrived at 1 Park Street, and were advised that the baby, identified as Angelise Rodriguez (DOB 6/25/2019), was not breathing on her own and unresponsive in the trauma room by Sgt. R. Miller and Officer J. Luis. Officer Luis told me that the baby was at home, located at 458 Middletown Ave. Apt 12, New Haven, CT in the care of her father, Angel Rodriguez and he was the person who had found her unresponsive. Sgt. Miller advised that the scene was being held by patrol officers.
While the trauma team worked on Angelise, I spoke briefly with the baby's father Angel as Detective Kyle spoke to the baby's mother, Coleen Rodriguez, who had been at work when the baby was found unresponsive.
Angel Rodriguez, stated that he had been home alone with his daughter, Angelise, today, caring for her while his wife was at work and his step son was at school. Angel said that his wife had woken up this morning and fed the baby while he rested. His wife went to work and he remained at home with the baby. The baby woke up around 10 or 11 a.m. and he picked her up and placed her in the bed next to him on her back, with cartoons on the t.v. He stated that she was awake, alert, laying on her back. She has not rolled over yet, so he was not concerned about her being on her back on the bed. He placed pillows around her so that she would not fall off the bed. Angel said that around noon he went to the store, later determined to be S.B. Mart, located at 411 Middletown Ave., to buy a black and mild cigar, leaving Angelise home alone; laying on her back on his bed. When he returned a short while later, he checked on her and she was fine, still laying on her back on the bed alert. Angel went downstairs to call his brother Abraham on his cellular phone and smoke for few minutes and when he came back upstairs he found Angelise face/belly down on the bed. She was unresponsive when he turned her over he saw that she was a blueish color in her face, cold to the touch and there was "slobber" on the sheet where her face had been. He called 911 and was given directions to do CPR until the ambulance arrived. At no time did she start breathing or respond while he had performed CPR on her. Angelise was transported by ambulance to 1 Park St. Yale Pediatric Hospital for further life saving measures.
Coleen Rodriguez, the baby's mother, stated to Detective Kyle that she had woken up this morning at approximately 8 a.m. and fed Angelise before leaving for work at around 8:30 a.m. Angelise was alert in her cradle when she left her in the car of her father. At approximately 12:41 p.m. she called and spoke to her husband reminding him to feed Angelise. She received a call at 2:09 p.m. from her husband telling her that Angelise was not breathing. Further questioning determined that Angelise spends the night sleeping on her back in her pack and play located inside their bedroom.
A consent to search form was read by both Angel and Coleen Rodriguez and signed allowing officers to search, photograph and seize items from the residence where Angelise was located. The form was later logged into evidence.
Detective Kyle and I spoke with Sgt. Miller and Decrescenzo and gave them the current information. I also contacted Sgt. Ettienne via phone and updated him on the information and that Detective Kyle and I were on our way to the residence to assist the Bureau of Identification with processing the scene.
Upon arrival at 458 Middletown Ave. Apt 12, we met with Officer Whityak who was holding the scene.

Investigator Signature Supervisor Signature

# CASE SUPPLEMENTAL REPORT



*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CON IDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *CUDDY, KRISTINE N (829)* **Date / Time:** *01/07/2020 11:30:20, Tuesday*

**Supervisor:** *AGOSTO, YESSENNIA (742)* **Supervisor Review Date / Time:** *01/09/2020 11:01:14, Thursday*

**Contact:** **Reference:** *Supplement*

Detective Parker arrived on scene from the Bureau of Identification to process the scene. On the walk through of the scene I observed clean bottles next to the kitchen sink and a green leafy plant like substance on the table. Walking upstairs to the parents' bedroom, I observed an unmade bed with pillows around a small area and a wet mark on the sheets. The wet mark was consistent with Angelise laying on her stomach and spitting up or drooling. Additional bottles were located in the house, one in the living room with what appeared to be a white liquid inside. I asked Detective Parker to photograph the scene, and seize the bottle containing the white substance, the sheets of the master bedroom and the green plant like substance from the kitchen table. Detective Parker was given a copy of the consent to search form for his records, and he later logged the seized items into evidence.
Detective Kyle and I left the scene and while enroute back to the Yale Pediatric Hospital I contacted Sgt. Ettienne via phone and gave him an update from the scene and that we were on our way back to the hospital for a patient update. When we arrived at 5 Park Street, we were informed that Angelise had been transferred to the Pediatric Intensive Care Unit (PICU) for further treatment. We responded to the PICU and I spoke with Angelise's nurse, Stacey Rose (RN), who stated that Angelise was not responsive, not breathing on her own, her pupils were fixed and dilated. Angelise had never regained consciousness. RN Rose stated that although two brain death scans, completed between and 12 and 24 hours apart were required to pronounce Angelise as deceased her condition was grave and she would most likely pass away over the weekend. When we returned to Police Headquarters I advised Sgt. Ettienne of the prognosis.
On Monday, November 11, 2019 at approximately 8:20 a.m. I responded to the PICU for a patient update on Angelise Rodriguez. When I arrived I spoke with the charge Nurse on the floor, Shannon Dunn. Dunn advised me that yesterday, Sunday November 10, 2019 at approximately 2:43 p.m. Dr. Joseph Manuel Panisello had pronounced Angelisa Rodriguez as deceased. Her body was still present at the hospital as her family wished to donate her organs and that would occur this evening. Her autopsy would most likely be conducted tomorrow morning, November 12, 2019. Sgt. Ettienne and Agosto were notified of the death.
Tuesday November 12, 2019 I responded to the Officer of the Chief Medical Examiner, located at 11 Shuttle Rd. Farmington, CT and observed the autopsy of Angelise Rodriguez. The autopsy was performed by Dr. DeJoseph. During the autopsy, Dr. DeJoseph found a skull fracture and was unable to determine a cause of death without further tests. Sgt. Agosto was made aware of the findings.
Thursday November 14, 2019 I was notified that although the PICU had not initially seen the skull fracture on the CTSCAN that was performed on November 8 2019 it had been present. Due to the lapse in time and the fact that they would not be able to determine if the skull fracture was recent or healing the cause of death would be pending but a timeline for the injury could not be determined. This finding makes an arrest unobtainable at this time.
On Wednesday, November 20, 2019 I met individually with both Angelise Rodriguez and Coleen Rodriguez to take a voluntary statement in regards to this incident.
Angel stated that on the morning of November 8th he got up and moved Angelise from her cradle into his bed and took a shower. She was laying on her back alert. His wife called him from work around noon to remind him to feed her. He left Angelise alone, alert, laying on her back on the bed and walked to the store. When he returned home he checked on her and she was in the same position alert. Angel went downstairs to smoke and call his

Investigator Signature Supervisor Signature

*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *CUDDY, KRISTINE N (829)* **Date / Time:** *01/07/2020 11:30:20, Tuesday*

**Supervisor:** *AGOSTO, YESSENNIA (742)* **Supervisor Review Date / Time:** *01/09/2020 11:01:14, Thursday*

**Contact:** **Reference:** *Supplement*

brother and when he returned upstairs he found Angelise on her belly, face down. He hung up the phone on his brother and picked her up. She was blue in the face and cold to the touch. He saw a wet mark on the sheets where her face had been. He called 911 and moved her to his step son's bedroom for more room to give CPR. The ambulance arrived and she was transported to the hospital. Angel was aware of the skull fracture that was found during the autopsy and said that he was unaware of any injuries to the baby until yesterday. Yesterday, his wife told him that about 2 weeks prior to her death while changing her diaper Angelise had fallen off the bed onto the floor. He was not home when this incident happened but believed that it may have caused the skull fracture. This concluded the interview.

Coleen stated that on November 8 she had woken up and fed Angelise before leaving her in the care of her father and heading to work. She called him at around noon to feed her and he later contacted her telling her that she was not breathing. When asked about the skull fracture Coleen stated that she had been changing the baby's diaper a few weeks ago and she had fallen from the bed to the floor possibly hitting her head. Coleen stated that the baby cried for about five minutes but appeared fine afterward. She said the only other incident she could think of was when her 9 year old son, Jermaine Cowan (DOB3/20/10) had accidently stepped on the baby's chest/neck in September. However, she took the baby for x rays and a checkup at West Haven Pediatrics, located at 367 Elm St, West Haven, CT the day after this happened and the baby had no injuries. This concluded this interview.

As of today, December 4, 2019 I am waiting for medical records and the cause of death to be determined. No further action will be taken in regards to this investigation due to the lack of time frame for the skull fracture and therefore who was responsible for her care when it occurred.

The case is closed as of January 7, 2020.

Investigator Signature Supervisor Signature

# CASE SUPPLEMENTAL REPORT



New Haven Police Department

OCA: 19045165

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST **Case Mng Status:** NA **Occurred:** 11/08/2019

**Offense:** FAMILY OFFENSES - NON VIOLENT

**Investigator:** CUDDY, KRISTINE N (829) **Date / Time:** 06/26/2020 10:28:30, Friday

**Supervisor:** AGOSTO, YESSENNIA (742) **Supervisor Review Date / Time:** 08/14/2020 10:38:05, Friday

**Contact:** **Reference:** Supplement

On March 17, 2020 I was contacted by Maura DeJoseph Deputy Chief Medical Examiner, who had conducted the autopsy on Angelise Rodriguez, stating that although the exam was not complete, she believed that the cause of death was the skull fracture, which in her opinion occurred within an hour before she was found unresponsive. DeJoseph M.O. stated that when the autopsy was completed she would reach out again.
On June 8, 2020 I found that I had received two messages, while out of office on June 5, 2020. The first message was from Natalie from the Department of Children and Families in regards to her case with the Rodriguez's. I contacted Natalie via telephone and told her that I am still awaiting the autopsy results for Angelise.
On June 9, 2020 I spoke to DeJoseph M.O. who stated that she had spoken with state prosecutor Stacy Miranda notifying her that she would be completing the autopsy of Rodriguez and the manner of death would be ruled a homicide.
On June 23, 2020 I spoke to and received an email from DeJoseph, stating that Angelise Rodriguez cause of death was "BLUNT IMPACT INJURY OF HEAD AND NECK WITH SKULL FRACTURE" the manner of death was certified as: HOMICIDE. The email had an attachment, with the police notification of the cause and manner of death attached, which was printed out and will be attached to the warrant, file and logged in as evidence. After my conversation with DeJoseph, she stated that she would be willing to testify that he findings of death, were a direct result of an injury that Angelise had sustained within an hour prior to being found unresponsive. With this new information and timeframe, I will be applying for an arrest warrant for Angel Rodriguez (DOB7/5/1985 [redacted]

Investigator Signature Supervisor Signature

New Haven Police Department OCA: 19045165

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *SOTO, LEONARDO (730)* **Date / Time:** *02/20/2021 17:55:46, Saturday*

**Supervisor:** *AGOSTO, YESSENNIA (742)* **Supervisor Review Date / Time:** *02/21/2021 19:32:48, Sunday*

**Contact:** **Reference:** *Supplement*

On or about December 1, 2020, due to Detective Cuddy's retirement, I was reassigned this investigation. It should be noted, the cell phone number 203-901-8628 was the number that the Angel Rodriguez provided to patrol officers the day of the incident.

On the morning of December 3, 2020, Homeland Security Investigations (HSI) Analyst Jennifer Stanton conducted a search on 203-901-8628 and through a historical records check, it was revealed that the carrier for the number is Sprint and the subscriber is Coleen Rodriguez. The address was also consistent with the address A. Rodriguez gave the day of the incident. On or about December 10, 2020, I obtained a search and seizure warrant for A. Rodriguez's Sprint cell phone records to corroborate the times that were given during his statement.

On or about December 11, 2020, I was able to make contact with C. Rodriguez and she agreed to come and give a second audio/video recorded statement. During the statement, I asked C. Rodriguez to go over the incident again. C. Rodriguez gave a consistent account of the incident that she gave to (Ret) Detective Cuddy. C. Rodriguez said she woke up, fed Angelise, changed her, put her son on the bus for school and left Angelise in the care of her father. I asked C. Rodriguez if Angelise appeared to be normal the night prior and she said yes.

At this time, C. Rodriguez once again brought up the incident that occurred when her son jumped on the bed and stepped on Angelise. It was again confirmed that Angelise was brought to her primary care physician and was evaluated. The evaluation produced that Angelise did not sustain any injuries from that incident. C. Rodriguez also brought up the incident when Angelise fell. During the first statement with (Ret) Detective Cuddy, C. Rodriguez said Angelise fell 2 weeks prior to her death. In the statement she gave on December 11, 2020, C. Rodriguez said Angelise fell 2 days prior to her death. C. Rodriguez said she left her alone in the room, went down stairs and heard the thump of Angelise hitting the floor.

After speaking with C. Rodriguez, I was able to locate A. Rodriguez who now resides at 1535 Central Ave. Bridgeport, CT. On or about December 11, 2020, A. Rodriguez agreed to come to 1 Union Ave. (NHPD) to give an audio/visual recorded statement. At the start of the interview, A. Rodriguez was read his Miranda Rights and he signed a rights waiver form.

I asked A. Rodriguez to go over the events leading to Angelise's death that occurred on November 8, 2019. A. Rodriguez gave the similar statement he gave to (Ret) Detective Cuddy. A. Rodriguez said he was sleeping before C. Rodriguez woke him up so he could stay with Angelise. A. Rodriguez was not very clear on times due the length of time that has passed, but he said when C. Rodriguez left, he picked Angelise up from the crib and placed her on his bed. I asked A. Rodriguez if Angelise was acting normal and he said yes. A. Rodriguez said Angelise was moving, laughing and behaving like a normal baby.

A. Rodriguez said he left Angelise on the bed unattended and he went running to the store up the street to get something to smoke. A. Rodriguez said he returned home and checked on Angelise. A. Rodriguez said Angelise

Investigator Signature Supervisor Signature

# CASE SUPPLEMENTAL REPORT

Printed: 04/23/2023 20:39

*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *SOTO, LEONARDO (730)* **Date / Time:** *02/20/2021 17:55:46, Saturday*

**Supervisor:** *AGOSTO, YESSENNIA (742)* **Supervisor Review Date / Time:** *02/21/2021 19:32:48, Sunday*

**Contact:** **Reference:** *Supplement*

was still in the bed, awake, alert and behaving like a normal baby. A. Rodriguez said he left Angelise alone in the bed again and he went downstairs to clean the bottles, have a smoke and listen to music. During this time, he spoke with C. Rodriguez and she reminded him to feed Angelise. A. Rodriguez said the maintenance worker knocked on the door, asked about the plumbing and he received a call from his brother.

A. Rodriguez said the phone call with his brother turned into an argument about his other brother. During the call, A. Rodriguez went upstairs to check on Angelise and when he went in the room, he found her face down on the bed, unresponsive, not breathing and there was a wet spot on the bed. A. Rodriguez said he brought Angelise to the other room, called 911 and the dispatcher gave him instructions on how to provide CPR Angelise.

At this time, I advised A. Rodriguez about the medical examiner's report. I told A. Rodriguez that Angelise died of blunt force trauma to the head and injuries to the spinal cord. A. Rodriguez said he did not injure Angelise and she sustained a previous fall. A. Rodriguez said Angelise suffered a fall while with the mother, but she did not tell him about the fall until after the incident.

On or about December 22, 2020, I spoke with Medical Examiner Dr. Maura DeJoseph. I asked Dr. DeJoseph if Angelise could have survived for several days with the injuries that were sustained and she said no. Dr. DeJoseph Angelise would have had a sudden onset of symptoms and would not have been able to survive to days. Dr. DeJoseph also said the injuries that were sustained were not caused by any type of fall. Based on Dr. DeJoseph's findings, it is determined that the injuries Angelise sustained were caused during the time she was with A. Rodriguez.

On the evening of December 15, 2020, I received an email from the Sprint legal team. The email contained the information that was requested in the search warrant I obtained on December 9, 2020. Upon brief examination of A. Rodriguez's phone records, I could see the calls that he made on November 8, 2019, and I was able to see calls were made during the times he said during his interviews.

On December 31, 2020, I was able to secure an arrest warrant for Angel Rodriguez for the following charges, CGS [redacted] and CGS 53-21 Risk of Injury to a Minor. On January 4, 2021, Det. J. Kyle and I went to 1535 Central Ave. Bridgeport, CT. in attempt to locate and arrest A. Rodriguez. Upon our arrival, with the assistance of officers from the Bridgeport Police Department, we were advised that A. Rodriguez was staying in New Haven with C. Rodriguez.

At this time, Det. Kyle and I went to 458 Middletown Ave. New Haven, CT Apt. 12, in attempt to locate A. Rodriguez. Upon our arrival, C. Rodriguez answered the door and advised us that A. Rodriguez was upstairs in his bedroom. For officer safety, Det. Kyle went to the bedroom and secured A. Rodriguez. After A. Rodriguez was secured, I advised him that he was under arrest do to an active arrest warrant. A. Rodriguez was transferred over to prisoner conveyance wagon 171 and was transported to 1 Union Ave. detention center with no further incident.

Investigator Signature Supervisor Signature

# CASE SUPPLEMENTAL REPORT

Printed: 04/23/2023 20:39

*New Haven Police Department* OCA: **19045165**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST* **Case Mng Status:** *NA* **Occurred:** *11/08/2019*

**Offense:** *FAMILY OFFENSES - NON VIOLENT*

**Investigator:** *SOTO, LEONARDO (730)* **Date / Time:** *02/20/2021 17:55:46, Saturday*

**Supervisor:** *AGOSTO, YESSENNIA (742)* **Supervisor Review Date / Time:** *02/21/2021 19:32:48, Sunday*

**Contact:** **Reference:** *Supplement*

The arrest was captured on my department issued BWC.

End of report

Investigator Signature Supervisor Signature

# *Exhibit 7*

# State of Connecticut
# Division of Criminal Justice
# REPORT OF INVESTIGATION



CASE NO. NNH-CR21-232846-T

| FILE TITLE | INSPECTOR | UNIT |
|---|---|---|
| STATE v ANGEL RODRIGUEZ | S. Stevenson | NHSAO |

| CROSS FILE | DATE OF REPORT |
|---|---|
| | **February 25, 2022** |

| REPORT RE | REPORT REQUESTED BY |
|---|---|
| **Marguerita Cora Statement** | **SASA S. Miranda** |

INITIAL: STATUS OF CASE; 1=ACTIVE 2=CLEARED ARREST 3=SUSPENDED 4=FUGITIVE 5=NO CRIMINAL ASPECT 6=CLOSED ENTER CODE> 2

SUPPLEMENTAL STATUS OF CASE: 1=ACTIVE 2=CLEARED ARREST 3=SUSPENDED 4=CIVIL 5=FUGITIVE 6=NO CRIMINAL ASPECT 7=CLOSED ENTER CODE> 1

PERSONS CODES - V=VICTIM S=SUSPECT C=COMPLAINANT W=WITNESS B=BUSINESS A=ARRESTEE K=ALIAS O=OTHER

| CODE | LAST NAME | FIRST NAME | M | SEX | DOB | TELEPHONE | ADDRESS |
|---|---|---|---|---|---|---|---|
| A | Rodriguez | Angel | | M | 7/05/1985 | | Currently Incarcerated |

On 2/23/2022, I received a call from a female party who stated that the wrong person was in jail for a case pending in New Haven Superior Court. The caller, who would only identify herself as "Angel," stated that an Angel Rodriguez party was incarcerated in January 2021, charged with Manslaughter in the New Haven death of his infant daughter, Angelise Rodriguez, who died from a fractured skull. The caller stated she was initially told by the baby's mother, Colleen Rodriguez, that Angel Rodriguez was arrested because he was high and under the influence when the baby was hurt. The caller stated that since Angel Rodriguez's incarceration, Colleen Rodriguez has admitted to her that she had fallen down stairs while holding the baby. Afterwards, the baby didn't seem well and wouldn't take a bottle. The caller stated Colleen didn't take the baby to the hospital, because she said she couldn't be late for work at the Walgreen's on Foxon Blvd. Instead, she left the baby alone with Angel Rodriguez and went to work. Later that day, the baby was found unresponsive and not breathing. Angel Rodriguez was arrested over a year later. The caller stated that Colleen has commented to her that "...he's (Angel Rodriguez) going to court for something I did," but the police can't charge her now, because of double jeopardy. The caller also stated to me that Colleen Rodriguez is trying to get paid through a lawsuit against the "Boppit" pillow company, claiming that the pillow somehow contributed to the baby's death. Following this call, I notified SASA Stacey Miranda of the caller's information.

On 2/24/2022, SASA Miranda notified me that she just had a conversation with a known female (hereinafter referred to as "KF"), regarding an unrelated matter. During that call, KF began to discuss the above referenced case and admitted to SASA Miranda that she was the person who called me the day before. Upon receiving this information, I contacted KF, who voluntarily agreed to be picked up and driven to the NHSAO, to be interviewed and provide a statement. At the NHSAO, KF reiterated her information to me, detailing same in a sworn statement. During the interview, KF broke down and cried several times, stating it was not easy for her to do this to someone so close to

| SIGNATURE OF INSPECTOR | DATE | REVIEWED (NAME AND TITLE) | DATE |
|---|---|---|---|
| Scott Stevenson | 9/22/2022 | Robert N. Sage Supervising Inspector | 9/22/22 |

Subscribed and sworn to before me, Notary Public, in and for County of ________

and State of Connecticut, this day of 20

(Notary Public)________

DCJ SENSITIVE
Connecticut Division of Criminal Justice
*THIS REPORT IS CONFIDENTIAL*
Neither it nor its contents may be disseminated outside the Agency to which loaned.

| FILE TITLE | INSPECTOR | UNIT |
|---|---|---|
| STATE v ANGEL RODRIGUEZ | S. Stevenson | NHSAO |

her. Following her statement, I returned KF home. During that ride, KF again became emotional and stated she felt bad, because if Colleen Rodriguez is arrested, she'll have nobody close left in her life. She added that she doesn't even like Angel Rodriguez because of how he treats Colleen, but he seemed to be a good father and doesn't deserve to be in jail over Colleen's actions.

| SIGNATURE OF INSPECTOR | DATE | REVIEWED (NAME AND TITLE) | DATE |
|---|---|---|---|
| [signature] | 9/22/2022 | Robert ~ Sogo Supervisory Inspector | 9/22/22 |

State of Connecticut
DIVISION OF CRIMINAL JUSTICE

OFFICE OF THE STATE'S ATTORNEY
NEW HAVEN JUDICIAL DISTRICT

PATRICK J. GRIFFIN
STATE'S ATTORNEY

235 CHURCH STREET
NEW HAVEN, CONNECTICUT 06510
PHONE (203) 503-6823 FAX (203) 789-6400

# VOLUNTARY STATEMENT

Date: 2/24/2022

Location: New Haven State's Attorney's Office

Person Providing Statement: Marguerita Cora (DOB: 1/03/1983)

Person Taking Statement: Inspector Scott Stevenson

Time Started: 4:51pm

Time Ended: 6:12pm

My name is Marguerita Cora and I am 39 years old. I have voluntarily come to the New Haven State's Attorney's Office to speak to Inspector Scott Stevenson about the death of Angelise Rodriguez. I was raised in Milford until I was 12, then I went into DCF care until I was an adult. I did not graduate from school, but I read and write well. I have not been threatened in any way or promised anything in return for this information.

I have known Colleen Rodriguez for around 8 years. I met Colleen when she started dating my brother, Juan Cora. They stopped dating, but we became very close, and remain close. Angelise Rodriguez was Colleen Rodriguez and Angel Rodriguez's daughter. She was born on June 25, 2019. I was so happy when Colleen asked me to be Angelise's Godmother.

I'll never forget November 9, 2019. I was working the morning shift at Chipotle in Milford and missed a few phone calls from Colleen after noon, before my shift ended at 3pm. When I had a chance, I checked my phone and saw a text from Colleen to call her "911", because the baby stopped breathing and was on the way to the hospital. I couldn't leave work early, so as soon as I got off around 3pm, I went straight to Yale and met up with Colleen, Angel and some other family. I remember all I heard was that Angel checked on the baby and found her face down and wasn't breathing. I was there when they pronounced her dead like 3 days later and is was completely heartbreaking.

In January 2021, Angel got arrested for Angelise's death. He was charged with Manslaughter and was sent to Cheshire Corrections. Colleen said that he was arrested because he was high and whatever happened was because he was under the influence. A few months later, we were talking about Angel. She was talking about how she supports Angel, and that how he wouldn't do anything on purpose to Angelise because he's good with his kids. She was also telling me that my mother was texting her and talking mad shit, like you're a baby killer and they should've got you, not him. I told Colleen to be careful what she says to my mom. Out of the blue Colleen said she fell down the stairs with the baby that morning. She said after the fall, she tried to give Angelise a bottle but she seemed like she didn't feel good and she wouldn't take it. She said she couldn't be late to work, or she couldn't call out, so she put the baby in bed and went to work, leaving her with Angel. Since that first time she told me, she's told me same story at least 10 times.

About 4 months ago, Colleen had another baby girl, Analise. While she was still pregnant with the baby, Colleen got into an accident in New Haven and ended up in an altercation with the driver. She told me got arrested for evading and she hoped she could pay a fine to clear the record, so it wouldn't mess up her AR if the cops came for her over Angelise.

Yesterday, me and Colleen were riding around in the car together. She said she couldn't wait for her lawsuit money to come in. She told me that she saw some Facebook ad for a lawsuit against the Boppit pillow company. I guess the ad claims that kids have died accidental deaths on the pillow. Colleen told me she bought a pillow to get a receipt and called the lawyers, who ended up taking her case. I told her don't hold your breath for that money because it wouldn't come in for years. I also asked her if the Boppit lawyers knew that Angel was in jail for a Manslaughter and that Angelise didn't die from SIDS. That's when she said that he was in jail for the incident I caused. She also said the cops can't come for her now because it would be double jeopardy. After she said this, I woke my 20 year old daughter up and had her come upstairs. I asked Colleen if she knew what double jeopardy was, that it means the same person can't be charged for the same thing twice. She then said well it doesn't matter, because I told the cops what happened already, about falling with the baby. My daughter commented, "You mean you falling down the stairs with the baby," at which point Colleen said she didn't want to talk about it anymore. Right after this, I called the State's Attorney's Office to tell them they had the wrong person in jail for Angelise's death. That's when I spoke with Inspector Stevenson and told him the story. He asked for my information, but I would only tell him my name was Angel.

Today, Inspector Stevenson asked me why I decided to come forward with this information after all this time. I told him I can't stand it anymore, how Colleen openly talks to me about how she fell with the baby, while Angel is in jail, facing 10 years in prison.

February 24, 2022

Page 3

(X) MHe

(X) Today, Inspector Stevenson showed me two Facebook pictures and asked me if I recognized the people. I immediately recognized the first picture of Colleen Rodriguez. It had a hearts filter around her head. I signed and dated the back of that picture. I also immediately recognized the second picture as being Angel Rodriguez laying next to Angelise. I also signed and dated the back of that picture.

Today, Inspector Stevenson also asked me if I knew if Colleen ever told Angel what happened. She's said that he knows, but not specifically that ~~she told~~ him the same story she told me.

I have read this statement and it's the entire truth (X) MHe

(X) MHe I have read (or have had read to me) the above statement, and it is the truth to the best of my knowledge. I fully understand that if I make a statement that is untrue and which is intended to mislead a law enforcement officer in the performance of his duty or function, I will be in violation of *C.G.S. Section 53a-157b, False Statement in the Second Degree, a class A misdemeanor.* (X) MHe

*WITNESSED*: ______ *SIGNATURE*: [signature]

*Sworn and subscribed before me this* 24 *day of* FEB, *20* 22 *in accordance with C.G.S.Section 1-24*

*SIGNED* [signature]





# *Exhibit 8*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANTHONY SCRICCA, ADMINISTRATOR OF THE ESTATE OF ANGELISE RODRIGUEZ; COLEEN RODRIGUEZ; & ANGEL MIGUEL RODRIGUEZ | : | Civil Action No. 3:22-cv-01497-RNC |
| Plaintiffs | : | |
| v. | : | |
| THE BOPPY COMPANY, LLC.; ARTSANA U.S.A., INC. D/B/A CHICCO; TARGET CORPORATION D/B/A TARGET STORE INC. | : | |
| Defendants | : | MAY 19, 2023 |

**PLAINTIFF COLEEN RODRIGUEZ'S REPLIES TO THE BOPPY COMPANY, LLC'S**
**NON-STANDARD DISCOVERY DATED MARCH 17, 2023**

Plaintiff Coleen Rodriguez, by and through the undersigned counsel, hereby answers the following interrogatories and requests for production pursuant to Federal Rules of Civil Procedure 33 and 34.

## I. DEFINITIONS

No Response Required.

## II. INTERROGATORIES

1. What is the name, e-mail address, and street address of the PERSON answering these interrogatories, and, if applicable, the PERSON's official position or relationship with the party to whom the interrogatories are directed?

**REPLY:** **Coleen Rodriguez**
**458 Middletown Ave., Apt 12**
**New Haven, CT 06513**

**With Assistance from Counsel,**
**Kenneth J. Krayeske, Esq.**
**BBB Attorneys, LLC**
**3651 Main Street, Suite 200**
**Stratford, CT 06614**

2. STATE in detail how the INCIDENT happened, including all actions taken by YOU to prevent the INCIDENT and whether YOU read, reviewed, and/or observed warning labels and/or instructions on the product referenced in the COMPLAINT.

**REPLY: I was not there, so I cannot state in detail how the incident happened. Whatever I know was what Angel told me what happened. I did not review the warning labels or the instructions on the product in the complaint. I knew once she started rolling over or flipping that she could not be on the Boppy.**

3. STATE in detail, each act or omission on the part of this Defendant that you contend constituted negligence that was either the sole or a contributing legal cause of the DECEDENT's death and as to each act or omission, please list the name and street address of all PERSONS having knowledge of the act or omission.

**REPLY: Dr. Erin Mannen of Boise State University was the lead author on a paper entitled "Pillows Product Characterization and Testing," commissioned by the United States Consumer Product Safety Commission under Task Order No. 61320621F1015. A copy of the CPSC Staff Statement on this paper from October 2022, along with this paper, is attached herein.**

**Dr. Mannen is not the Plaintiff's expert at this point, but the work in this paper explains in precise detail the flaws in this Boppy Newborn Lounger.**

**Plaintiff will disclose her expert in accordance with the scheduling order in this case.**

4. With respect to YOUR contention that the PRODUCT had any design defect(s), STATE and set forth in detail the exact nature of the defect(s), the part(s) or component(s) YOU contend are defective, and the hazard or risks created by such defect.

**REPLY: Please see response to INT #3 above.**

5. With respect to YOUR contention that the PRODUCT had any design defect(s), set forth in detail each commercially available alternative design or modification YOU contend was possible to reduce or eliminate the claimed defect and/or hazard, including the identity of any product using the commercially available alternative design and/or modification.

**REPLY: Please see response to INT #3 above.**

6. If YOU contend that the design, labeling and warnings, manufacture, distribution, or marketing of the PRODUCT failed to comply with any governmental and/or industry codes, standards, regulations, or advisories, then set forth in detail the manner in which YOU contend the PRODUCT failed to comply with the specific governmental and/or industry code, standard, regulation, or advisory.

**REPLY: Please see response to INT #3 above.**

7. STATE any and all infirmities, illnesses, and/or disabilities that the DECEDENT had before the INCIDENT causing death, including any illnesses or disorders and STATE the dates, names of and street address of treating or consulting doctors or hospitals.

**REPLY: Please see attached medical records. Angelise had no disabilities, but she had a sensitive stomach and was using the purple Simulac can, as prescribed by her pediatrician.**

8. IDENTIFY and STATE the names and addresses of all PERSONS who are believed or known by YOU to have any knowledge concerning any of the issues in the COMPLAINT, and specify the subject matter about which the witness has knowledge.

**REPLY:**

**Angel Miguel Rodriguez, currently incarcerated and to be released May 17, 2023, found baby Angelise unresponsive.**

**Melissa Drinkwater, 21 Wall Street, Shelton, CT 06484, brought the Boppy Newborn Lounger to our baby shower as a gift from our cousin Kelly Egan.**

**Kelly Egan, 10 Cedarstone Rd., Oxford, CT, purchased the Boppy Newborn Lounger for us and gave it to Melissa Drinkwater to give to us at the shower.**

**Loretta Drinkwater, 48 Manilla Ave., Milford, CT 06460, attended the baby shower and may remember the Boppy at the shower.**

**Maria Rodriguez, 203-818-8186, Angel Rodriguez's older sister who attended the baby shower and may remember the Boppy at the shower.**

**Yvette Rodriguez, Angel Rodriguez's older sister who attended the baby Shower and may remember the Boppy at the shower.**

**Jessica Rivera, Angel's niece who attended the baby shower and may remember the Boppy at the shower.**

**Joanna Rivera, Angel's niece who attended the baby shower, and may remember the Boppy at the shower.**

**Sisu Rivera, Angel's nephew who attended the baby shower, and may remember the Boppy at the shower.**

**Chris Donahue, Holmesdale, PA, attended the baby shower, and may remember the Boppy at the shower.**

**Angel's nephew Richie, who attended the shower and posted pictures on Instagram under the user name deathangelkyo, and may remember the Boppy at the shower.**
**Dr. Erin Mannen, Mechanical and Biomedical Engineering Department, Boise State University, the flawed design of the Newborn Lounger.**
**Wyatt Davis, Mechanical and Biomedical Engineering Department, Boise State University, the flawed design of the Newborn Lounger.**
**Sarah Goldrod, Mechanical and Biomedical Engineering Department, Boise State University, the flawed design of the Newborn Lounger.**
**Trevor Lujan, Ph.D., Mechanical and Biomedical Engineering Department, Boise State University, the flawed design of the Newborn Lounger.**
**Safeer Siddicky, Ph.D., Mechanical and Biomedical Engineering Department, Boise State University, the flawed design of the Newborn Lounger.**
**Dr. John Carroll, Arkansas Children's Research Institute, Little Rock, AR, the flawed design of the Newborn Lounger.**
**Tom Gwiazdowski, Artsana USA, Inc., distribution and licensing agreement between Artsana USA, Inc. and Artsana S.P.A., among other topics.**
**All medical personnel listed in the medical records produced in discovery will have knowledge about Baby Angelise's medical condition.**
**The Chief State's Medical Examiner is a witness to the state's autopsy.**

**This list is not exhaustive and will be updated in accordance with the Plaintiff's obligations under the scheduling order in this case. Plaintiff reserves the right to update and amend this list as more information becomes available.**

9. If YOU have heard or know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in the COMPLAINT, IDENTIFY and STATE the name and address of each PERSON who made the statement or statements, the name and address of each PERSON who heard it, and the date, time, place, and substance of each statement.

**REPLY: My husband Angel Rodriguez made statements to the police contained in police reports.**

10. Excluding the INCIDENT that is the subject of the COMPLAINT, STATE any and all accidents or personal injuries the DECEDENT suffered, together with the date, time and place of such accident or personal injury and the names and street addresses of all PERSONS involved.

**REPLY: Three days before my daughter was killed by the Boppy Newborn Lounger, I had put her on the bed, on top of the Boppy, and she somehow fell onto the floor. The Boppy**

**apparently flipped. We did not bring her to the hospital. She seemed ok. I kept her awake for six hours and she looked fine to me.**

**On September 5, 2019, my then nine-year-old son Jermaine tripped over Angelise while she was on the floor, and I took her to the hospital. Nothing was wrong with her. They did a chest x-ray, which was inconclusive.**

11. If any written, oral, recorded, or any form of statement has been obtained by YOU from any PERSON concerning any of the matters relating to the INCIDENT, IDENTIFY and STATE the name, street address, and telephone number of the PERSON from whom the statement has been obtained, the date the statement was obtained, the name and the street address of the PERSON taking the statement, the present location of the statement and state whether or not the PERSON from whom this statement was taken was provided a copy of the statement.

**REPLY: The only report or statement I am aware of is the police report.**

12. If YOU have made an agreement with anyone that would limit that party's liability to anyone for any of the damages sued upon in this case as set forth in the COMPLAINT, IDENTIFY and STATE the terms of the agreement and the parties to it.

**REPLY: I have made no such agreement.**

13. If a private autopsy has been conducted on the DECEDENT, STATE when, by whom (provide the name and address), and describe all reports and data collections generated as a result of the private autopsy, along with the suspected causes of death.

**REPLY: No private autopsy was conducted.**

14. IDENTIFY and STATE the name and address of every PERSON or organization to whom YOU have given notice of the INCIDENT set forth in the COMPLAINT because YOU believe that PERSON may be liable in whole or in part to YOU.

**REPLY: I do not believe I have provided notice to any persons other than defendants in this case.**

15. STATE whether Angel Miguel Rodriguez had ever left the DECEDENT unattended prior to the date of the INCIDENT and describe in detail those occasions.

**REPLY: Not to my knowledge.**

16. IDENTIFY the name of the PERSON who provided a statement to the Connecticut State's Attorney's Office that the mother of the DECEDENT dropped and/or physically harmed the DECEDENT shortly before the DECEDENT's death.

**REPLY: I told police Angelise fell off the bed, but I do not know who told the State's Attorney's Office.**

17. IDENTIFY the first time Angel Miguel Rodriguez claimed that the DECEDENT's death was caused by the PRODUCT.

REPLY: **I do not know.**

18. IDENTIFY when any of the Plaintiffs purchased the PRODUCT or, if the PRODUCT was not purchased, IDENTIFY when any of the Plaintiffs came in possession of the PRODUCT for the first time.

**REPLY: Angel and I received the Boppy Newborn Lounger as a gift from Kelly Egan, who gave it to my cousin Melissa Drinkwater to bring to the baby shower we held on or about Saturday, June 8, 2019. The baby shower was flamingo themed, and we had a kiddie pool for the kids in Angel's family who attended. The Boppy Newborn Lounger came to us in a Target bag. Our guests included Melissa Drinkwater, her mom (my aunt) Loretta Drinkwater, Chris Donahue, his girlfriend, and his girlfriend's daughter Nadia, as well as people from Angel's family like Maria Rodriguez, Yvette Rodriguez, Jessica Rivera, Joanna Rivera, Sisu Rivera, Abraham Rodriguez, and Angel's cousins Pito, and Richie. I include photos from the shower as part of the production here.**

## III. REQUEST FOR PRODUCTION

1. Any and all DOCUMENTS related to the autopsy, including but not limited to the autopsy report, the final report, handwritten notes, and photographs.

**REPLY: Please see attached.**

2. Death certificate for the DECEDENT.

**REPLY: Please see attached.**

3. Any and all DOCUMENTS RELATED to the probate proceeding of the DECEDENT, including but not limited to the court order appointing the Personal Representative of the DECEDENT's Estate.

**REPLY: Please see attached.**

4. Birth certificate of the DECEDENT.

**REPLY: Please see attached.**

**REPLY: Please see attached.**

6. Federal Income Tax Returns and W-2 Forms for the past five years including individual and joint tax returns for those persons that claimed the DECEDENT as a dependent.

**REPLY: The last income tax return I can find is from 2018, which is attached. I cannot remember if filed one for 2019, but I do not think I did. I have not worked since Angelise died, so I have not filed any income tax returns since then.**

7. Cover sheets of all life insurance policies in effect on the date of the DECEDENT's death insuring the DECEDENT.

**REPLY: No such documents exist.**

8. Cover sheets of any and all health insurance policies in effect on the date of the DECEDENT's death insuring the DECEDENT.

**REPLY: Baby Angelise was on HUSKY state run medical insurance.**

9. Color copies of all photographs that RELATE to the INCIDENT, the allegations in the COMPLAINT, including but not limited to, the location of the INCIDENT, the PRODUCT, and the DECEDENT before or after death.

**REPLY: Please see all attached photographs from the baby shower where we received the Boppy from Kelly Egan as a gift, photos of baby Angelise using the Boppy Newborn Lounger, photos of baby Angelise in the hospital, photos from her funeral, and photos of her organ donation thank you card.**

10. Any and all videos that RELATE to the INCIDENT, the allegations in the COMPLAINT, including but not limited to, the location of the INCIDENT, the PRODUCT, or the DECEDENT before or after demise.

**REPLY: Many of these photos have short 2 or 3 second .mpeg clips that were taken simultaneously with the photos submitted herein, but contain no additional information. Should defendants want them, they can be produced.**

11. Any and all DOCUMENTS that REFER or RELATE to the medical history of the DECEDENT, including any and all medical records of the DECEDENT.

**REPLY: Please see attached.**

12. Any and all DOCUMENTS that REFER or RELATE to the prenatal health and medical care for the DECEDENT's birth mother during the pregnancy and six months postpartum.

**REPLY: Plaintiff Coleen Rodriguez is in the process of obtaining such documentation, and will submit it when it is in her possession in accordance with her continuing duty of production.**

13. Any and all DOCUMENTS that RELATE to invoices, bills, or statements for medical services and treatment rendered in connection with the INCIDENT, including but not limited to, statements of physicians, hospitals, and other institutions or individuals providing care and treatment to the DECEDENT up until demise.

**REPLY: Please see attached from Yale New Haven.**

14. Any and all DOCUMENTS constituting statements made by this Defendant, its agents or employees, that are in YOUR possession or control, that REFER or RELATE to the INCIDENT, the DECEDENT, the PRODUCT, or the issues raised in the COMPLAINT.

**REPLY: The only such statement Plaintiff is aware of is at https://www.boppy.com/pages/product-recalls.**

**Other statements are public statements Boppy would already be aware of, like in the New York Times story of September 23, 2021.**

**https://www.nytimes.com/2021/09/23/business/baby-lounger-pads-recall.html**
**A copy of this is attached.**

15. Any and all DOCUMENTS that RELATE to invoices, bills, or statements reflecting expenses incurred for the funeral and burial of the DECEDENT.

**REPLY: The state of Connecticut paid some of the costs, and I paid about $300.00, and I do not have a receipt. The funeral home, Funeraria Luz de Paz at 462 E. Washington Ave., Bridgeport, CT 06608 submitted all the documents to the state and I need to get that information from them.**

16. Any and all DOCUMENTS that REFER or RELATE to, or otherwise support, YOUR contention that this Defendant was in any way negligent and that negligence resulted in the death of the DECEDENT.

**REPLY: See response to INT #3, above.**

17. Any and all DOCUMENTS that REFER or RELATE to, or otherwise support, YOUR contention that the PRODUCT was defectively designed.

**REPLY: See response to INT #3, above.**

18. Any and all DOCUMENTS that REFER or RELATE to, or otherwise support, YOUR contention that the PRODUCT had inadequate warnings.

**REPLY: See response to INT #3, above.**

19. Any and all DOCUMENTS that REFER or RELATE to any investigation by a law enforcement or other government agency regarding the INCIDENT, the DECEDENT, YOU, or the DECEDENT's mother, including but not limited to investigations by the Connecticut Department of Children and Family.

**REPLY: See response to INT #3, above.**

20. Any and all DOCUMENTS identified in Plaintiffs' Rule 26 Initial Disclosures dated January 18, 2023.

**REPLY: Please see attached.**

21. Any and all DOCUMENTS that support YOUR claimed damages alleged in the COMPLAINT.

**REPLY: Please see attached.**

22. Any and all DOCUMENTS that support YOUR claim for physical, mental, or emotional injuries.

**REPLY: Please see attached medical records and fake Facebook profiles of people who have been harassing me through social media about Angelise's death, like the Justice for Angelise profile. People make profiles of my name and change it and I am powerless to stop it, as Facebook does not respond.**

23. Any and all notices of intent to collect damages from the tort-feasor directed towards any provider of collateral source payments. Please also include proof that the notice was sent by certified or registered mail.

**REPLY: No such documents exist that I am aware of.**

24. Any and all DOCUMENTS that REFER or RELATE to statements from providers of collateral source payments which assert a right to subrogation or reimbursement.

**REPLY: No such documents exist that I am aware of.**

25. Any and all DOCUMENTS and correspondence, of any kind and at any time, by or between and amongst the Plaintiffs and any other PERSON related to the events described in the COMPLAINT and/or the DECEDENT's death.

**REPLY: Documents relevant to this Request for Production are protected by the attorney client privilege and a log will be provided. All other documents in the possession of the plaintiff are attached, if they exist.**

26. Any and all audio recordings that REFER or RELATE to the INCIDENT and the allegations in the COMPLAINT, including but not limited to the location of the INCIDENT, the PRODUCT, or the DECEDENT before or after the DECEDENT's death.

**REPLY: I have no such documents in my possession other than the short two second audio clips that go with the photographs as I described.**

27. Any and all reports from any experts YOU intend to call at the time of trial, including any and all DOCUMENTS the experts have reviewed in preparation for rendering any opinions in this case.

**REPLY: Plaintiff will disclose her expert witness in accordance with the scheduling order in this case.**

28. Any and all DOCUMENTS that REFER or RELATE to any law enforcement investigation into the INCIDENT, including but not limited to all police reports.

**REPLY: Please see attached.**

29. If applicable, any and all DOCUMENTS that REFER or RELATE to any private autopsy of the DECEDENT, including but not limited the final report, the *curriculum vitae* of the individual who performed the private autopsy, and a list of all available tissue, blood, or fluid samples from the autopsy.

**REPLY: No such private autopsy was conducted.**

30. Any and all statements obtained from any PERSON pertaining to the INCIDENT or the allegations in the COMPLAINT.

**REPLY: I am not in possession of any such statements other than what is contained in the police report and medical records, which are attached.**

31. Copies of all receipt(s), proof of payment, checks, credit card statements, and/or bank statements associated with the purchase of the PRODUCT at issue in the case.

**REPLY: Kelly Egan would be in the possession of any such documents, if they still exist. We are attempting to obtain these if they exist.**

32. Copies of any photographs or videos of the PRODUCT and/or location of the INCIDENT at issue in this case.

**REPLY: Please see attached.**

33. Any and all DOCUMENTS that YOU reviewed or relied upon in responding to the Defendant's First Set of Interrogatories served contemporaneously herewith.

**REPLY: All such photos and documents are attached.**

34. Any and all DOCUMENTS on which YOU intend to rely at trial.

**REPLY: Plaintiff will provide such notice in accordance with the scheduling order in this case.**

**CERTIFICATION REGARDING RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**

I hereby certify that the foregoing responses to the interrogatories and requests for production of documents are true, complete and correct to the best of my knowledge.

Coleen Rodriguez

Coleen Rodriguez

Subscribed and sworn to before me this 19th day of May, 2023.

Christine A Davis

Notary Public/My commission expires
Commissioner of the Superior Court

CHRISTINE A. DAVIS
*NOTARY PUBLIC - CT 181741*
My Commission Expires July 31, 2025

CHRISTINE A. DAVIS NOTARY PUBLIC CONNECTICUT

{B1687114.1}

## CERTIFICATION

This is to certify that a copy of the foregoing was or will immediately be mailed or delivered electronically or non-electronically on May 19, 2023 to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served.

***Counsel for Boppy Company, LLC and Artsana USA, Inc.***
Kevin R. Kratzer
Boyle, Shaughnessy & Campo, P.C.
280 Trumbull St., 23rd Floor
Hartford, CT 06103
860-925-9800
Fax: 860-278-7757
Email: kkratzer@bsctrialattorneys.com
Email: tscannell@boyleshaughnessy.com
Email: wklimczak@boyleshaughnessy.com

***Counsel for Target Corporation***

RENEE W. DWYER
CONWAY STOUGHTON LLC
641 FARMINGTON AVENUE
HARTFORD, CT 06105
(860) 523-8000 (P)
(860) 523-8002 (F)
rdwyer@conwaystoughton.com

/s/

Kenneth J. Krayeske, Esq.