UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Anthony Scricca, et al., | |
| Plaintiffs, | Civil No. 3:22-CV-01497 (RNC) |
| v. | |
| The Boppy Company, LLC, et al., | March 21, 2024 |
| Defendants. | |

**RULING ON THE PLAINTIFF'S MOTION TO COMPEL DISCOVERY PRODUCTION TO THEIR FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT THE BOPPY COMPANY, LLC (ECF No. 84)**

Anthony Scricca, Coleen Rodriguez, and Angel Miguel Rodriguez (collectively, "the plaintiffs") have moved the Court for an order compelling the defendant The Boppy Company, LLC ("Boppy"), to produce copies of all written discovery materials from six other cases currently pending in other federal district courts. (ECF No. 84, at 1–3.) The plaintiffs claim that the factual and legal similarities between those cases and this one are sufficient to show the relevance of the discovery they seek. (ECF No. 84-12, at 9.) Boppy filed its opposition on January 19, 2024, characterizing the requests as improper "cloned discovery" that would "run afoul of protective orders in other jurisdictions" and urging the Court to deny the motion. (ECF No. 93, at 3.) The plaintiffs submitted their reply on January 26, 2024 (ECF No. 101), and the Court heard oral argument from the parties on February 16, 2024. (ECF No. 116.) For the reasons below, the Court **DENIES** the plaintiffs' motion to compel.

**I.   BACKGROUND**

This case arises out of the tragic death of four-month-old Angelise Rodriguez. (Compl., ECF No. 1, at 2.) Boppy manufactured and sold an infant product called the "Newborn Lounger."

(*See id.*)  Baby Angelise died on November 8, 2019, and her parents contend that she was asphyxiated by the lounger.  (*Id.* at 2–3.)  Boppy says that her death was not "[]related to its product," but rather was "a homicide resulting from 'blunt impact injury of head and neck with skull fracture[.]'"  (ECF No. 102, at 2) (quoting report of Chief Medical Examiner Dr. Maura DeJoseph).  Boppy adds that the baby's father – the plaintiff Angel Rodriguez – was charged with manslaughter in connection with her death and was ultimately convicted of the felony offense of risk of injury to a minor.  (*Id.* at 7.)

The plaintiffs filed their complaint in state court on November 7, 2022 (ECF No. 1, at 10), asserting product liability, recklessness, and Connecticut Unfair Trade Practices Act ("CUTPA") claims against Boppy.  (*Id.* at 10–13 and 21–25.)  The Target Corporation, another named defendant, removed the matter to federal court on November 23, 2022.  (*Id.* at 1.)

The complaint alleges that Boppy recklessly "placed the Boppy Newborn Lounger in to [*sic*] the stream of commerce when it knew or should have known that it exposed consumers, including the infant decedent [in this matter], to a defective and/or dangerous product."  (*Id.* at 14.)  It further alleges that Boppy sold this product "to the public despite prior claims against [Boppy] for losses and injuries similar to the losses and injuries of the Plaintiff."  (*Id.* at 13.)

Boppy is currently involved in litigation over some of those "prior claims" in different Federal District Courts.  The plaintiffs have identified six such lawsuits brought against Boppy in the District of Maryland,[1] the Northern District of Florida,[2] the Eastern District of Missouri,[3] the

---

[1] *Wooten et al v. The Boppy Company, LLC, et al*, No. 1:23-cv-2695 (D. Md.) ("Wooten")

[2] *Seich v. The Boppy Company, LLC*, No. 3:22-cv-668-TKW-HTC (N.D. Fla.) ("Seich")

[3] *Parker et al v. The Boppy Company, LLC, et al*, No. 4:22-cv-1320-HEA (E.D. Mo.) ("Parker")

2

Southern District of Indiana,[4] the Eastern District of Louisiana,[5] and the Northern District of Alabama.[6] (ECF No. 84-12, at 4–6.) In at least five of the cases, if not all six, the plaintiffs allege that an infant died after being placed on a Boppy Newborn Lounger.[7] (*Id.*) Based on the perceived similarity of those claims to their own, the plaintiffs here issued their first set of requests for production ("RFP") to Boppy on October 18, 2023, requesting "all discovery Boppy produced in the other six actions" and "all transcripts of depositions from the other six actions." (*Id.* at 2.)

Boppy objected to these RFPs on November 13, 2023, "on several grounds." (ECF No. 93, at 2.) Boppy questioned the relevance of the information the plaintiffs sought, claimed that the plaintiffs "improperly [sought] responses to up to 150 interrogatories" from the other actions, and argued that the protective orders issued in those other cases prohibited Boppy's complying with such a request. (*Id.*) After the parties exchanged Rule 37 letters "[o]n December 6, 2023, and December 18, 2023," they found themselves at an impasse. (*Id.* at 2; ECF No. 84-12, at 3.)

Seeking to break that impasse, the plaintiffs filed this motion to compel Boppy "to produce the discovery here that it has produced in six other nearly identical products liability actions . . . across the country." (*Id.*, at 1–2.) They argue that the similarity of the claims in the seven cases is sufficient to show that the materials they request are presumptively relevant to the case here in Connecticut. (*Id.* at 7.) Boppy disagrees, claiming that there exist factual and legal differences in plaintiffs' case that negate any suggestion of relevance. (ECF No. 93, at 6–13.) These

---

[4] *Clark et al v. The Boppy Company, LLC*, No. 1:22-cv-2120-JRS-MJD (S.D. Ind.) ("Clark")

[5] *Limeux et al v. May Company LLC et al*, No. 2:23-cv-190-EEF-JVM (E.D. La.) ("Limeux")

[6] *Mainor v. The Boppy Company, LLC*, No. 2:22-cv-1483-ACA (N.D. Ala.) ("Mainor")

[7] As will be noted below, the *Limeux* case is "against The May Company, LLC, for the May Lounger," but the plaintiffs assert that that lounger "is, in reality, the Boppy Lounger." (ECF No. 84-12, at 6.)

differences include a criminal conviction, a witness statement, and a medical examiner's report that challenge the plaintiffs' theory of causation in this matter. (*Id.* at 7–10.) Boppy also raises burden objections based on the protective orders in the other cases, arguing it would have to violate those orders to comply with the plaintiffs' RFPs and that seeking modifications in six different District Courts would be unduly burdensome. (*Id.* at 13–16.) In their reply filed on January 26, 2024, the plaintiffs dispute the factual distinctions that Boppy raised. (ECF No. 101.)

Senior United States District Judge Robert N. Chatigny referred this discovery dispute to the undersigned on January 2, 2024 (ECF No. 86). This Court heard oral argument on the motion on February 26, 2024. (ECF No. 116.) All briefs having been filed and the parties having been heard, the motion is now ripe for decision.

## II.   DISCUSSION

### A.   Applicable Legal Principles

Subject to the proportionality requirement and other limitations set forth in Rule 26, a party may discover relevant, nonprivileged information in the other party's possession. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). Moreover, information "within the scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"While the Federal Rules of Civil Procedure do not define 'relevant,' the operative definition can be found in Rule 401 of the Federal Rules of Evidence." *Gaynor v. City of Meriden*, No. 3:17-cv-1103 (CSH), 2019 WL 2537669, at *2 (D. Conn. June 20, 2019). Under that rule, information is "relevant" if it "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003). "The determination of whether information is discoverable because it is relevant to the claims or

defenses depends on the circumstances of the pending action." *Conservation L. Found. v. Shell Oil Co.*, No. 3:21-cv-933 (JAM) (TOF), 2023 WL 5434760, at *10 (D. Conn. Aug. 22, 2023) (quoting Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendments) (ellipsis omitted).

In the discovery phase of a case, the concept of relevance is "liberally construed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). In part because the concept of relevance is not limited by considerations of evidentiary admissibility at the discovery stage, *see* Fed. R. Civ. P. 26(b)(1), "[i]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-Civ.-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016); *accord Pal v. Cipolla*, No. 3:18-cv-00616 (MPS) (TOF), 2020 WL 564230, at *7 (D. Conn. Feb. 5, 2020) (relevance is "construed broadly" in discovery); *Martino v. Nationstar Mortg. LLC*, No. 3:17-cv-1326 (KAD), 2019 WL 2238030, at *1 (D. Conn. May 23, 2019) (at discovery stage, relevance is "an extremely broad concept").

Yet this does not mean that a party must automatically produce any document that catches its adversary's fancy. As Judge Merriam once observed, "Fed. R. Civ. P. 26(b)(1) does not allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Williams v. City of Hartford*, No. 3:15-cv-933 (AWT) (SALM), 2016 WL 3102001, at *2 (D. Conn. June 2, 2016) (quoting *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-cv-1924 (CFD) (WIG), 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)). Stated differently, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Id.* (quoting *Wells Fargo Bank*, 2009 WL 585430, at *5).

When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks. "The burden of demonstrating relevance [is] on the party seeking discovery." *A.M. v. Am. Sch. for the Deaf*, No. 3:13-cv-1337 (WWE) (JGM), 2016 WL 1117363, at *2 (D. Conn. Mar. 22, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-Civ.-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015); *see also Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (same). The moving party must make "a *prima facie* showing of relevance," after which "it is up to the responding party to justify curtailing discovery." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 134 (S.D.N.Y. 2012)).

One proper basis for objection is when the requested discovery is not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* An additional consideration applies to electronically stored information: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Furthermore, Rule 26(c)(1) permits parties to move for protective orders if complying with the requested discovery would involve "undue burden or expense."

Although information must be proportional to be within the scope of Rule 26(b)(1), the discovery-seeking party does not bear a burden to demonstrate that each of the elements of proportionality are satisfied. To the contrary, the task of determining proportionality is borne

"collective[ly]" by "[t]he parties and the court," with each party addressing the elements that it would be natural to expect them to address. Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments. The discovery-seeking party, for example, "should be able to explain the ways in which the underlying information bears on the issues as that party understands them." *Id.; see also Conservation L. Found. v. All-Star Transp., LLC*, No. 3:21-cv-210 (JBA) (TOF), 2022 WL 16901999, at *2 (D. Conn. Nov. 11, 2022). Conversely, the responding party "ordinarily has far better information – perhaps the only information" – on the elements of burden or expense. Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments. It therefore may not "refuse discovery simply by making a boilerplate objection that it is not proportional." *Id.; see also Endurance Am. Spec. Ins. Co. v. Wm. Kramer & Assocs., LLC*, No. 3:18-cv-192 (MPS) (RAR), 2020 WL 6940761, at *7 (D. Conn. Mar. 30, 2020).

Whether asserted as a stand-alone objection under Rule 26(c)(1) or as part of a lack-of-proportionality objection under Rule 26(b)(1), a claim of undue burden or expense typically must be supported by an affidavit or other evidence. "A party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden.'" *Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)). But "the Court may overlook the lack of such evidence when the requests are overly broad or unduly burdensome on their face." *Holjes v. Lincoln Nat'l Life Ins. Co.*, No. 3:21-cv-1277 (VDO) (SDV), 2024 WL 1131115, at *4 (D. Conn. Mar. 15, 2024) (citing *Conservation L. Found.*, 2022 WL 16901999, at *2).

B.      **Discussion**

In their motion, the plaintiffs seek an order compelling compliance with the First Set of Requests for Production that they served upon Boppy on October 18, 2023. (ECF No. 84-1.) That set comprises only two requests. (*Id.*) The first sought production of "[c]opies of any Interrogatories and Requests for Production or other written discovery requests issued to Defendant The Boppy Company, LLC and its responses and objections to those Interrogatories and Requests for Production or that other written discovery" in the six out-of-district cases referenced in Section I above. (*Id.* at 5.) The second sought production of "[a]ll deposition notices, deposition transcripts and requests for production issued to the Corporate Representative of the Defendant The Boppy Company, LLC under FRCP 30(b)(6)" in the same six cases. (*Id.* at 6.)

For the most part, these plaintiffs do not know what the plaintiffs in the other cases requested, let alone what Boppy produced in response to those requests. Their motion includes copies of interrogatories and requests for production that the plaintiff in *Clark* served upon Boppy (ECF Nos. 84-9, 84-10), and a copy of a subpoena served upon Meltwater News US Inc.[8] in the *Mainor* case. (ECF No. 84-8.) The third and fourth sets of requests for production served by the plaintiff in *Seich* are on the public docket, because they were the subject of motion practice. (*See* ECF Nos. 101-1, 101-2 in *Seich v. The Boppy Co., LLC*, No. 3:22-cv-668 (TKW) (HTC) (N.D. Fla.).) But the plaintiffs in this case do not know what was requested in the first and second set, nor do they know what was requested in *Wooten*, *Parker*, or *Limeux*. Because in many instances they do not even know the *questions* that were posed to Boppy, they would seem not to have met their burden to show that Boppy's *answers* to those questions are relevant to their case.

---

[8] The plaintiffs describe Meltwater as "a social media information and processing company," but they do not explain its relationship to this case or to *Mainor*. (ECF No. 84-12, at 14.)

The plaintiffs nonetheless argue that the Court can infer the relevance of the discovery from the similarities between the cases. Put simply, they contend that "the cases are so similar that the materials sought in discovery should be shared." (ECF No. 84-12, at 10.) They say that *Wooten* involves a claim by the estate of a child who "was caused to asphyxiate and die due to a design defect with a Boppy Original Newborn Lounger." (*Id.* at 5.) They add that in *Seich,* a medical examiner determined that the infant's "cause of death" was "positional asphyxia due to the Boppy Newborn Lounger." (*Id.*) In *Parker*, the child allegedly "suffocated to death while on or having rolled off the Boppy Newborn Lounger," and in *Mainor*, an infant died "due to asphyxia by suffocation while laying on the" lounger. (*Id.* at 5-6.) With respect to *Clark*, they say only that the child died "after being placed in" the product. (*Id.*) And while *Limeux* involves a claim "against The May Company, LLC, for the May Lounger," the plaintiffs assert that that lounger "is, in reality, the Boppy Lounger." (*Id.* at 6.) The plaintiffs argue that the similarities between these cases and their case render relevant anything that the other lawyers could have thought to ask for. (*Id.* at 9) (urging the Court to compel production "because the cases are so similar").

Boppy disagrees on both factual and legal grounds. As a factual matter, it points to the medical examiner's report of a "blunt impact injury" to Baby Angelise, and it argues that "none of [the other six] cases turn on the same threshold issue here of whether Boppy's product was even involved in the circumstances or among the causes of death." (ECF No. 93, at 10.) And as a legal matter, it contends that "the underlying legal claims are not sufficiently similar" to establish relevance on the ground urged by the plaintiffs. (*Id.* at 10.) It notes that the other six cases "involve[] claims under separate state product liability schemes . . . that are subject to differing legal standards from the instant one brought under Connecticut law." (*Id.*)

9

Although the Court regards some of Boppy's arguments as overstated, it nevertheless agrees with the larger point that the plaintiffs have not met their burden to show the relevance of all the discovery they seek.  The requests for production in *Clark,* for example, inquire after not only the Boppy Newborn Lounger but rather the entire "product line" (ECF No. 84-9, at 1–6), but these plaintiffs say that their case "is not . . . about other Boppy products."  (ECF No. 84-12, at 7.)  The requests for production in *Mainor* likewise inquires after "Similar Products" (ECF No. 11, *Mainor v. The Boppy Co.*, No. 2:22-cv-1483 (ACA) (N.D. Ala.)), but again, the plaintiffs in this case acknowledge that those products are not relevant to their claims.  (ECF No. 84-12, at 7.)  In *Clark*, the plaintiff demanded production of "[a]ny and all documents where [Boppy] marketed, advertised, and sold the Boppy Original Newborn Lounger as a product that infants could be placed on safely" (ECF No. 84-9, at 5, 7), but these plaintiffs conceded at oral argument that they have pled no false or deceptive advertising claims that would render all these materials relevant.  In *Seich*, the plaintiff sought the personnel and disciplinary files of an individual Boppy employee (ECF No. 101-1, *Seich v. The Boppy Co.*, No. 3:22-cv-668 (TKW) (HTC) (N.D. Fla.)), but the plaintiffs in this case were unable to articulate what, if any, relevance those files would have here.  Other examples abound, but the gist is this: the plaintiffs in the other six cases have demanded information that, however relevant it may or may not be to their own cases, are conceded to be irrelevant in this one.  Thus, to give the plaintiffs the order they seek – that is, to order Boppy to produce all information produced in the other six cases – would be to order it to produce substantial amounts of admittedly irrelevant material.

To be sure, *some* of the materials sought by the other six plaintiffs would be relevant to this case.  The plaintiff in *Clark*, for example, demanded production of "documents discussing a hazard analysis conducted on the" Newborn Lounger, and "results of any and all testing

10

performed" on it.  (ECF No. 84-9, at 3, 6.)  But the burden of going through the six prior productions and separating out the irrelevant information would be an "undue" one, when one considers that it could easily be avoided if the plaintiffs' attorneys simply draft their own requests for information relevant to this case.  *Cf.* Fed. R. Civ. P. 26(c)(1) (permitting parties to move for protective orders from discovery requests that would impose an "undue burden"); *cf. also Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700 (S.D. Ind. Mar. 7, 2000) ("The plaintiffs' counsel must do their own work and request the information they seek directly.").

      The plaintiffs urge the Court to follow a few cases in which courts have ordered compliance with requests that the producing party regarded as improper "cloned discovery."  (ECF No. 84-12, at 9–11.)  "Cloned discovery" is when a party seeks "the same documents that [the opposing party] produced" in discovery in another action.  *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-cv-1781 (PGG) (BCM), 2020 WL 9423921, at *1 (S.D.N.Y. Aug. 31, 2020).  Some courts take a dim view of "cloned" discovery requests and have denied motions to compel responses to them.  *E.g., Midwest Gas Servs., Inc.*, 2000 WL 760700, at *1; *Wollam v. Wright Med. Grp., Inc.*, No. 10-cv-3104 (DME) (BNB), 2011 WL 1899774, at *2 (D. Colo. May 18, 2011) (observing that while "[d]irect requests allow a court to consider the relevance of the information sought to the specific claims and defenses in the pending case," a "cloned" request "does not allow such review" and "simply reaches too far").  Other courts have, however, allowed them under certain circumstances.  *See, e.g., Sticht v. Wells Fargo Bank, N.A.*, 20-cv-1550-VAB, 2023 WL 2206641 (D. Conn. Feb. 24, 2023); *Michelo*, 2020 WL 9423921, at *2–3.  The plaintiffs acknowledge, as they must, that the former line of cases exists.  (ECF No. 84-12, at 9–10) (noting that the *Midwest Gas Services* court held that "cloned discovery 'is irrelevant and immaterial unless [the] fact that

11

particular documents were produced or received by a party is relevant to the subject matter of the instant case'"). But they exhort the Court to follow the latter line. (ECF No. 84-12, at 9–11.)

The cases cited by the plaintiffs are distinguishable. In *Whitman v. State Farm Life Insurance Co.,* the court compelled compliance with a request for production that the defendant considered "a textbook example of an improper 'cloned' request." No. 3:19-cv-6025 (BJR), 2020 WL 5526684, at *2 (W.D. Wash. Sept. 15, 2020). But it did so because the case was a true carbon copy of the prior case, having been brought by the same plaintiff's lawyer against the same defendant, and alleging the same causes of action arising out of the same insurance company business practice and policy contract. *Id.* at *3. The court allowed that the result would be different if the prior case and the instant case "were factually and legally distinct," *id.*, and that is the case here, because the other six cases against Boppy raise issues that this case does not. Boppy's other products, its advertising and marketing practices, and the disciplinary record of its employees are evidently relevant to those cases, but the plaintiffs acknowledge that they are not relevant to this one, at least in the context of this motion.

*Sticht* is likewise distinguishable. In that case a mortgagee sued her bank, alleging that it wrongfully refused to modify her loan. 2023 WL 2206641, at *1–2. She asked the bank to produce documents from another loan modification case called *Hernandez. Id.* at *3. When the bank refused, she moved to compel, and Judge Bolden granted her motion in substantial part. *Id.* at *3–4. But he did so only after finding that her case was "essentially identical" to *Hernandez. Id.* at *4. Moreover, the plaintiff had substantially narrowed her requests during the meet-and-confer process; whereas she had initially asked for all documents produced in *Hernandez*, after the discovery conference she sought only certain exhibits to the *Hernandez* class certification motion and certain deposition transcripts. *Id.* at *1. Thus, she was not asking Judge Bolden to do what

the plaintiffs in this case are asking the Court to do – that is, to produce all discovery from other cases in which they do not even know the questions that were asked, merely because there are some similarities between the cases.  Courts do not typically allow this.  *See, e.g., Okla. ex rel. Edmonson v. Tyson Foods, Inc.*, No. 05-CV-329 (TCK) (SAJ), 2006 WL 2862216, at *2 (N.D. Okla. Oct. 4, 2006) ("Plaintiffs appear to equate 'similarity to a prior lawsuit' to relevant to a claim or defense in the current proceeding.  The Court cannot accept this conclusion as automatic."); *Wollam*, 2011 WL 1899774, at *2 (citing *Oklahoma ex rel. Edmonson* for the proposition that "a showing of 'some surface similarities' is insufficient to require '*carte blanche*' production of all documents produced in a different case").

The plaintiffs say that they chose to propound this particular form of discovery request for purposes of efficiency.  (ECF No. 84-12, at 8) ("[S]haring discovery between all seven plaintiffs and Defendant Boppy seems like an easy and first step to simplifying this complex" set of cases.).  Their impulse is commendable, and consistent with the spirit of the Federal Rules.  *See* Fed. R. Civ. P. 1 (stating that the rules are to be "administered . . . to secure the just, speedy, and inexpensive determination of every action and proceeding").  But on a motion to compel, the discovery-seeking party must make a threshold showing of relevance.  *Huseby, LLC v. Bailey*, No. 3:20-cv-167 (JBA) (TOF), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021) ("When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks."). The plaintiffs have not made a sufficient showing here.

III.    CONCLUSION

The parties briefed and argued the question of whether the Court should compel the production of all written discovery in six other cases to which Boppy is a party.  The Court has concluded that the plaintiffs have not met their burden of showing the relevance of all the materials

they seek, and that the requests are overbroad as formulated. For those reasons, the plaintiffs' motion to compel is **DENIED**. The denial is of course without prejudice to the plaintiffs' right to serve direct requests for non-privileged information relevant to the specific claims and defenses asserted in this case.

This is not a Recommended Ruling. It is a ruling by a magistrate judge on a "nondispositive motion[ ] . . . relating to discovery," D. Conn. L. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b). It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge